DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
OF THE COUNTY OF WARREN.

WALTER D. SHOTWELL, PLAINTIFF, v. DAIRYMEN'S
LEAGUE CO-OPERATIVE ASSOCIATION, INC., A COR-
PORATION, DEFENDANT.

Decided April 6, 1944.

For the plaintiff, *Demarest & Roth.*

For the defendant, *Herr & Fisher.*

KINGFIELD, D. C. J. The state of demand in the above case contains two counts. In the first count. the plaintiff sued to recover for milk sold and delivered to the defendant and claimed damages in the sum of $162.99; which was reduced by stipulation by both parties in open court to the sum of $153.59. In the second count, the plaintiff sued to recover the amount of $69.34 due on a certificate of indebtedness; which was reduced by stipulation by the parties to the suit to the sum. of $64. The defendant thereby

admitted that there is due the plaintiff on both counts of his state of demand the sum of $217.59. The defendant further agreed that this amount be set off against any recovery allowed on its counter-claim, and that judgment be entered for the net amount only, if such be the case.

The counter-claim involved a suit for liquidated damages arising out of palintiff's breach of a contract wherein the plaintiff appointed the defendant his sales agent with full power and authority to sell the plaintiff's milk, until terminated by either party by written notice as specified in paragraph 17. The contract further provided that the plaintiff would not dispose of his milk through any other source except with the consent of the defendant. The contract also provided as follows:

"2. The producer covenants and agrees to and with the Association that if he at any time refuses or neglects to deliver such milk or the manufactured product thereof produced or manufactured by him to the Association, or upon its order, at such time and place as the Association may direct, then and in that event in every such case the producer neglecting or refusing so to do will pay to the Association for such refusal or default, the sum of Ten ($10.00) Dollars per cow for 12 cows, and if such default or refusal shall continue for more than one month, an additional sum of Three Dollars ($3.00) for each cow per month, for the same number of cows, so long as such default or refusal continues, none of which payments are to be construed to be a penalty or forfeiture, but as stipulated liquidated damages as prescribed in Section 37 of the Cooperative Corporation Law of the State of New York, and it is hereby agreed that the Association will suffer by reason of such refusal or default, it being agreed by the parties hereto that this agreement is one of a series of agreements with producers of milk, depending for its true value upon the strict adherence of each and of all of said producers to each and all of said agreements."

The testimony indicated that the plaintiff signed the contract, although he claimed he did not read it and had no copy of same. However, it is elementary that the failure to read

the contract did not relieve the plaintiff from any liability arising from its breach. The facts clearly disclosed that the plaintiff deliberately breached the contract by selling milk to O'Dowd's Dairy, another distributor, without the consent of the defendant. Plaintiff attempted to justify his breach by a sale of the farm stock to his brother, but possession was never delivered and an immediate reconveyance was effected by the brother. The brother did not appear to testify, the bills of sale were not introduced in evidence, and the plaintiff had uninterrupted possession of the farm stock, all of which indicated that a true sale did not take place.

This brings up the question as to whether the liquidated damage clause is enforceable as such, or whether it should be considered a penalty, and also whether its validity depends on the law of New Jersey or that of New York.

After the plaintiff signed the contract in New Jersey, it was sent to the defendant's office in New York where it was signed and accepted. The defendant is a New York corporation and its business is confined for the most part to New York but it does operate in four other states, including New Jersey. The case of *Mayer* v. *Roche* (*Court of Errors and Appeals*), 77 *N. J. L.* 681; 75 *Atl. Rep.* 235, held that the proper law of the contract is the law by which the parties thereto intended or may fairly be presumed to have intended, the contract to be governed. It is stated in 112 *A. L. R.*, on page 124, as follows:

"With the qualification (1) that its enforcement must not be violative of the settled public policy of the forum, or of a statute of the forum enacted for the protection of its citizens, and (2) that it must not have been adopted with the object of evading the otherwise applicatory law, it is held or assumed in many cases, at least as to the construction, effect, and obligation of the contract, and frequently as to its validity, that a stipulation in a contract that it shall be governed or construed by the law of a particular jurisdiction is valid and should be given effect."

In view of the above, if the parties themselves agreed that the New York law govern the clause in question, this court does not intend to overrule their expressed intention.

A New York attorney testified for the defendant and introduced in evidence section 37 of the Cooperative Corporation Law of New York, *Consol. Laws, c. 77,* which is as follows:

"Members may be required to sell through corporation; breach of contract. *1.* The by-laws may require the members to sell all or any part of their specifically enumerated agricultural, dairy and horticultural products, exclusively through the corporation; but in such case, shall specify a reasonable period, in each year, during which any member, by giving to the corporation the notice prescribed in the by-laws, may withdraw and be released from his obligation to employ the services of the corporation in respect to such products and supplies.

"*2.* The by-laws or the marketing contract may fix, as liquidated damages, which shall not be regarded as penalties, specific sums to be paid by the members to the association upon the breach of any provision of the marketing contract regarding the sale or delivery or withholding of products; and may further provide that the member who breaks his contract will pay all costs, premiums for bonds, expenses and fees, in case any action is brought upon the contract by the association.

"*3.* In the event of any such breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract and to a decree of specific performance thereof. Pending the adjudication of such an action and upon filing a verified complaint showing the breach or threatened breach, and upon filing a bond in such form and amount as may be approved by the court, the association shall be entitled to a temporary restraining order and preliminary injunction against the members."

He further testified that a contract exactly similar to the one in question and containing the same provision as to liquidated damages was construed by the New York Supreme Court and held to be one for liquidated damages and not a penalty in the case of *Parker* v. *Dairymen's League Cooperative Association, Inc.* (1927), 222 *App. Div.* 341; 226 *N. Y. S.* 226.

Under the circumstances, giving consideration to the fact that the parties expressly intended to be governed by New York law under which it was held that the clause in question was one for liquidated damages, recovery is allowed to the defendant on its counter-claim for $264 against which is set off $217.59, leaving a net amount due of $46.41 on its counter-claim, and judgment is accordingly entered for this amount.

It must also be mentioned that due consideration was given to the fact as to whether the enforcement of the clause violated the settled public policy of New Jersey. The court felt it did not. First of all, New Jersey law permits marketing contracts and agencies by agricultural co-operative associations; and requires members to deal through the association. Liquidated damages are allowed for the failure of members to perform their contracts which are also held to be valid contracts. *R. S.* 4:13–26 to 4:13–29; *N. J. S. A.* 4:13–26 to 4:13–29.

There was testimony offered by Stephen Farley, a division representative of the defendant, employed by it for fourteen years, who introduced evidence showing how the defendant was damaged by the plaintiff's breach of contract. The attorney for the plaintiff strenuously objected to Mr. Farley's testimony which was admitted by the court.

The testimony consisted of book records showing the price the defendant received for the sale of milk for the months in question and the price the producer would have received, which showed a profit for distribution among the members of the association. There was testimony showing the amount of milk sold by the plaintiff to O'Dowd's Dairy for the same period and the price received by him—a figure considerably more than he would have received from the defendant. The figures also indicated that the amount claimed by the defendant as liquidated damages was considerably less than the profit the defendant would have received if the plaintiff had complied with his contract with the defendant. This indicated that the amount claimed as liquidated damages for the period in question was a sum fairly related to the actual damages suffered by the defendant.

The plaintiff's attorney sought to establish that there was no loss to the defendant by reason of plaintiff's breach because it was a co-operative association and not one for profit. It seems to the court that he overlooked the fact that even a non-profit organization can profit from a particular transaction which is shared in by all members of the association. There was also testimony that the defendant had milk commitments to meet and that the loss of plaintiff's milk had to be made up elsewhere.

Finally, the New Jersey cases were considered on the question as to whether the clause in question is one for liquidated damages or a penalty. The rule in New Jersey is found in the case of *Monmouth Park Association* v. *The Wallis Iron Works* (*Court of Errors and Appeals*), 55 *N. J. L.* 132; 26 *Atl. Rep.* 140.

"In determining whether a sum, which contracting parties have declared payable on default in performance of their contract, is to be deemed a penalty or liquidated damages, the general rule is that the agreement of the parties will be effectuated. Their agreement will, however, be ascertained by considering, not only particular words in their contract, but the whole scope of their bargain, including the subject to which it relates. If, on such consideration, it appears that they have provided for larger damages than the law permits, *e. g.,* more than the legal rate for the non-payment of money, or that they have provided for the same damages on the breach of any one of several stipulations, when the loss resulting from such breaches clearly must differ in amount, or that they have named an excessive sum in a case where the real damages are certain or readily reducible to certainty by proof before a jury, or a sum which it would be unconscionable to award, under any of these conditions the sum designated is deemed a penalty. And if it be doubtful on the whole agreement whether the sum is intended as a penalty or as liquidated damages, it will be construed as a penalty, because the law favors mere indemnity. But when damages are to be sustained by the breach of a single stipulation, and they are uncertain in amount and not readily susceptible of proof under the rules of evidence, then, if the parties have

agreed upon a sum as the measure of compensation for the breach, and that sum is not disproportionate to the presumable loss, it may be recovered as liquidated damages. These are the general principles laid down in the text books and recognized in the judicial reports of this state."

The above rule of law was also applied in the case of *Ferber Construction Co.* v. *The Board of Education of the Borough of Hasbrouck Heights (Court of Errors and Appeals)*, 90 *N. J. L.* 193; 100 *Atl. Rep.* 329; also, see, *The Borden Co.* v. *Manley (Supreme Court)*, 127 *N. J. L.* 461; 23 *Atl. Rep.* (2d) 281, and *Suburban Gas Co.* v. *Mollica (Supreme Court)*, 131 *N. J. L.* 61; 34 *Atl. Rep.* (2d) 892.

The following cases set forth in the plaintiff's memorandum of law were duly considered: *Cheddick's Executor* v. *Marsh (Supreme Court)*, 21 *N. J. L.* 463; *Whitfield* v. *Levy (Supreme Court)*, 35 *Id.* 149; *Hoagland* v. *Segur (Supreme Court)*, 38 *Id.* 230; *Lansing* v. *Dodd (Supreme Court)*, 45 *Id.* 525; *Summit* v. *Morris Traction Co. (Court of Errors and Appeals)*, 85 *Id.* 193; 88 *Atl. Rep.* 1048; *Gibbs* v. *Cooper (Court of Errors and Appeals)*, 86 *N. J. L.* 226; 90 *Atl. Rep.* 1115; *Bonhard* v. *Gindin (Court of Errors and Appeals)*, 104 *N. J. L.* 599; 142 *Atl. Rep.* 52; 218-220 *Market Street Corp.* v. *Krich-Radis Co., Inc. (Court of Errors and Appeals)*, 124 *N. J. L.* 305; 11 *Atl. Rep.* (2d) 109.

The rule of law has been the same in all of the cases although its application depended upon the particular state of facts in each case.

For the foregoing reasons judgment will be accordingly entered for the defendant on its counter-claim as hereinbefore set forth.