154 N.J. Super. 309 (1977)
381 A.2d 378
PAUL R. KNOLLMEYER, PLAINTIFF-APPELLANT,
v.
RUDCO INDUSTRIES, INC., RUDCO CHECKS, INC., FIRST NATIONAL CITY BANK AND DAVID RUDNICK, CECIL RUDNICK AND KEITH WINTERS AS THE ADMINISTRATIVE COMMITTEE OF THE PROFIT SHARING RETIREMENT PLAN OF RUDCO CHECKS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1977.
Decided November 16, 1977.
*310 Before Judges LORA, SEIDMAN and MILMED.
Mr. Morton L. Ginsberg argued the cause for appellant.
Mr. Paul Z. Lewis argued the cause for respondents (Messrs. Lewis & DeClemente, attorneys).
The opinion of the court was delivered by MILMED, J.A.D.
Plaintiff, a former employee of defendant Rudco Checks, Inc.[1] (Rudco), sought to recover from defendants $24,216 which he alleged was due him under a Rudco Profit Sharing Plan (Plan). Defendants, with the exception of First National City Bank, answered and denied *311 the alleged indebtedness, claiming that since plaintiff terminated his employment with Rudco and took employment with a Rudco competitor in the business of check imprinting and marketing, he forfeited all of his right or interest in the Plan. Both parties moved for summary judgment. After a hearing, the trial judge initially denied both motions. On application by defendants for reargument and cross-motion for summary judgment by plaintiff, the trial judge, after a further hearing, denied plaintiff's motion and granted defendants' motion for summary judgment. This appeal by plaintiff followed.
The essential facts are not in substantial dispute. In 1963 plaintiff started with Rudco as a salesman. In 1969 he was promoted to New York District Manager. In the latter part of 1972 he was assigned as Regional Manager of the New England area. In regard to this assignment and his reaction to it, he stated, in answers to interrogatories:
In August 1972, plaintiff was asked if he would take on the development of the New England region. Defendants had opened a new plant in Holyoke, Massachusetts, at the end of 1971 to service the New England region. Sales were not developing therein. Plaintiff was told that he was needed for approximately one year to develop the sales and salesmen in this region. He was assured that his earnings would not be affected because the basis for his income would be the New York market. He then worked Monday to Friday in New England and returned to his home in New Jersey on weekends.
In January, 1973, plaintiff was advised by defendants that he was required to work for two years in New England, and that his income would no longer be tied to New York sales. He was further informed that he should move his family to New England. When he asked what would happen after two years, he was told by defendants that he would be moved to the next new region that defendants desired to develop, possibly in Cleveland, Ohio, Biloxi, Mississippi, or wherever the company decided to expand. Such an uncertain future involving frequent geographical changes and speculative future income was an untenable one for an executive of plaintiff's age and experience, and there existed no choice but for plaintiff but [sic] to leave the employ of defendants.
*312 In April 1973 plaintiff resigned from Rudco Checks, Inc. to take a position with one of its few competitors, American Bank Stationery Division of American Standard Company.
Article 9.10 of the Profit Sharing Plan of Rudco Checks, Inc., reads:
If an employee who has been a salesman, manager, foreman or executive with the employer ceases his employment with the employer to take a position with a competitior [sic] of the employer or if within two (2) years after the termination of employment and while receiving payments hereunder an employee takes employment with a competitor of the employer, then he shall be deemed to have forfeited the entire amount then standing to his credit in his account in the Fund as of the time of the occurrence of such event.
The decision as to whether such employment is with a competitor as set forth herein shall be made by the Administrative Committee and shall be binding on all parties.
On May 4, 1973 the Administrative Committee of the Plan noted plaintiff's resignation, effective as of May 1, 1973, and his employment with American Bank Stationery Division, a competitor of Rudco, and voted "that as a result of such employment, Mr. Knollmeyer [plaintiff] is deemed to have forfeited his account in the Profit Sharing Plan pursuant to the terms of Article 9.10 of the Plan."[2]
Article 13.1 of the Profit Sharing Plan provides, in part, that:
The adoption and maintenance of the Plan shall not be deemed to constitute a contract between the Employer and an employee or to be consideration for, or an inducement or condition of, the employment of any person. * * *
Article 13.2 of the Plan requires that "The provisions of the Plan shall be construed in accordance with the laws of the State of New York." This choice-of-law stipulation will govern interpretation of the Plan's provisions since the public policy of New Jersey does not dictate otherwise. Monsanto *313 v. Alden Leeds, 130 N.J. Super. 245, 252 (Law Div. 1974); Shotwell v. Dairymen's League Cooperative Ass'n, Inc., 22 N.J. Misc. 171, 174, 37 A.2d 420 (D. Ct. 1944). See also, Zenith Laboratories, Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 514 (3 Cir.1976), cert. den. 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); Farris Engineering Corp. v. Service Bureau Corp., 406 F.2d 519, 520-521 (3 Cir.1969).
Plaintiff suggests that the public policy implicit in the Pension Reform Act of 1974 (more properly the Employee Retirement Income Security Act of 1974), 29 U.S.C.A. § 1001 et seq. and 26 U.S.C.A. § 401 et seq., underpins his claim that the forfeiture provision of Article 9.10 of the Rudco Plan is void and unenforceable. We find no merit in that suggestion. The federal law became effective subsequent to the events involved in this case. By the terms of 29 U.S.C.A. § 1144, its "nonforfeitable" requirements, 29 U.S.C.A. § 1053, can have no retroactive application to the cause of action asserted here. See Sheppard v. Blackstock Lumber Co., Inc., 85 Wash.2d 929, 540 P.2d 1373 (Sup. Ct. 1975). Cf. Ellis v. Lionikis, 152 N.J. Super. 321, 330-332 (Ch. Div. 1977).
We discern no sound basis for determining the validity of the forfeiture provision in the Rudco Profit Sharing Plan (Article 9.10) in a manner different from that used to determine the validity of a noncompetition clause in an employment contract, i.e., by a test of reasonableness. See Sheppard v. Blackstock Lumber Co., Inc., supra, in which the Supreme Court of Washington had before it the question of the validity of a "forfeiture-for-competitive-activities provision in a profit-sharing retirement plan." The court, agreeing with the approach of the Supreme Court of Oregon in Lavey v. Edwards, 264 Ore. 331, 505 P.2d 342 (1973), pointed out that
The forfeiture clause is indeed an inhibitive influence on an employee's decision whether to accept a new job. Oftentimes new employment *314 will not compensate for the loss of retirement benefits. See Note, 50 Cornell L.Q. 673 (1965). However, we do not consider such clauses void and invalid per se, but agree with the Lavey court that validity of such clauses should be determined as is the validity of a noncompetition clause in an employment contract  by a test of reasonableness. 50 Cornell L.Q., Supra; Comment, Forfeiture of Pension Benefits for Violation of Covenants not to Compete, 61 Nw. U.L. Rev. 290 (1966). This is consistent with the restatement test (2ALI Restatement of the Law of Contracts 987-1002 (1932)), and with the statement of that test in Blake, Employee Agreements not to Compete, 73 Harv. L. Rev. 625 (1960). The author of that article set out the test as follows at 648-49:
A covenant restraining an employee from competing with his former employer on termination of employment is valid if it is reasonable in view of the circumstances of the particular case. A restraint is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public. [540 P.2d at 1376; footnotes omitted.]
New York recognizes that
* * * a pension is not a pure gratuity, but rather a deferred portion of the compensation earned for services rendered. * * * The consideration supporting the employer's promise to pay retirement pensions is the employee's forbearance from resigning and continued work over a period of years * * *.
[Hadden v. Consolidated Edison Co. of New York, Inc., 34 N.Y. 2d 88, 356 N.Y.S.2d 249, 255, 312 N.E.2d 445, 449 (Ct. App. 1974)]
Our Supreme Court has similarly held in regard to an employees' profit-sharing trust. See Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 35 (1967), in which the court added: "Forfeiture being disfavored, we should take any tenable view of the indenture to avoid it. Indeed, these plans are to be liberally construed in favor of the employee." Beyond this, both states determine the validity of noncompetition clauses in employment contracts by a test of reasonableness. Karpinski v. Ingrasci, 28 N.Y.2d 45, 320 N.Y.S.2d 1, 4, 268 N.E.2d 751 (Ct. App. 1971); Solari Industries, Inc. v. Malady, 55 N.J. 571, 576 (1970).
In Karpinski v. Ingrasci, supra, the Court of Appeals of New York had before it the issue of whether a covenant by *315 a professional man not to compete with his employer was enforceable and, if it was, to what extent. Plaintiff alleged a breach of the restrictive covenant and sought an injunction to enforce it, and money damages. In his opinion for the court Chief Judge Fuld pointed out that:
There can be no doubt that the defendant violated the terms of the covenant when he opened his own office [for the practice of oral surgery] in Ithaca. But the mere fact of breach does not, in and of itself, resolve the case. Since there are "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood," the courts will subject a covenant by an employee not to compete with his former employer to an "overriding limitation of `reasonableness.'" [320 N.Y.S.2d at 4, 268 N.E.2d at 753]
Some ten months before the Court of Appeals decision in Karpinski, Justice Jacobs, in his opinion for our Supreme Court in Solari Industries, Inc. v. Malady, supra, said:
* * * while a covenant by an employee not to compete after the termination of his employment is not, because of the countervailing policy considerations, as freely enforceable, it will nonetheless be given effect if it is reasonable in view of all the circumstances of the particular case. It will generally be found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public. See Blake, supra, 73 Harv. L. Rev. at 648 et seq.; Comment, supra, 31 Tenn. L. Rev. at 452-55; Comment, supra, 21 Ark. L. Rev. at 215-18. [55 N.J. at 576]
In granting summary judgment in favor of defendants the trial judge initially applied the so-called "employee choice" doctrine which he apparently believed was the applicable New York law. However, as pointed out in Bradford v. New York Times Co., 501 F.2d 51 (2 Cir.1974):
The New York Court of Appeals has announced that there are powerful considerations of public policy which militate against the sanctioning of the loss of a man's livelihood. The covenant not to compete with a former employer is subject to an "overriding limitation of reasonableness." Karpinski v. Ingrasci, 28 N.Y.2d 45, 49, 320 N.Y.S.2d 1, 4, 268 N.E.2d 751, 753 (1971); Purchasing Associates, Inc. v. Weitz, 13 N.Y.2d 267, 272, 246 N.Y.S.2d *316 600, 603-604, 196 N.E.2d 245, 247-248 (1963). In view of the strong public policy of the state, we cannot accept the theory that New York has adopted the so-called "employee choice" doctrine, which is alleged to make judicial determination of reasonableness unnecessary. [at 55]
After discussing the "employee choice" doctrine, the trial judge commented:
However, the plaintiff argues that the Employee-Choice Doctrine is not the law of New York, and in support of this contention cites Bradford v. New York Times Co., 501 F.2d 51 (2d Cir.1974). In Bradford, the Second Circuit Court of Appeals held that lower court decisions of New York were wrong in applying the Employee-Choice Doctrine. Rather, the test in determining whether a non-competition clause is valid is whether it is reasonable under all the facts and circumstances. In support of this position, the Court cited Karpinski v. Ingrasci, 28 N.Y.2d 45, 49 [320 N.Y.S.2d 1, 268 N.E.2d 751] (1971) and Purchasing Associates, Inc. v. Weitz, 13 N.Y.2d 267, 272 (1963), both decisions from the state Court of Appeals.
Although the Court feels that it is not obligated to accept a federal decision as controlling precedent of State law, it is the opinion of the Court that the result will be the same under either the Employee-Choice Doctrine or the test of reasonableness.
Under the Employee-Choice Doctrine, the plaintiff had the choice either to remain at Rudco and reap the benefits of the profit-sharing plan or accept employment with a direct competitor and forfeit all of his rights under the plan. From the proofs, it shows that he chose the latter. The fact that he terminated his employment because Rudco was going to transfer him to New England does not change the result. Terminating his employment with Rudco because of a change in situs of employment is still a voluntary act. Rankin v. Kellan, [Kellam] 388 S.W.2d 306 (Tex. Civ. App. 1965); Also see Russell v. Princeton Laboratories, 50 N.J. 30, 36 (1967).
Applying the test of reasonableness enunicated in the Bradford case, the Court must also conclude that the forfeiture clause in the Rudco plan is valid and enforceable as a matter of law. In Bradford, the non-competition restraint was to apply for ten years without any geographical restrictions. During this ten year period, the plaintiff would receive annual installments, so long as he didn't compete. The U.S. Court of Appeals found no elements of unreasonableness in these restrictions. In the case at bar, it appears that, in terms of time and geographical restriction, Article 9.10 is less harsh than the provision in the Bradford case. Also, like the plaintiff in Bradford, the plaintiff Knollmeyer performed special and unique services. Therefore, the Court must conclude that under *317 New York law, the forfeiture provision of Rudco's profit sharing plan is reasonable as a matter of law.
The trial judge erred in concluding that "under New York law, the forfeiture provision of Rudco's profit sharing plan is reasonable as a matter of law." He obviously omitted to apply the appropriate test of reasonableness referred to above.
The matter will, accordingly, be remanded to the Law Division for trial with full exploration of all the material facts (Blake, "Employee Agreements Not to Compete," 73 Harv. L. Rev. 625, at 646 et seq. (1960)) and determination if Article 9.10 of the Rudco Profit Sharing Plan is reasonable in view of all of the circumstances of the case. Plaintiff is to be afforded ample opportunity to establish undue hardship or, as he suggests, that he was dealt with by the answering defendants in such inequitable manner as to render unenforceable as to him the forfeiture provision of the Profit Sharing Plan. See Blake, supra, 73 Harv. L. Rev. at 684-686; 6A Corbin, Contracts, § 1394 at 89-93 (1962). Solari Industries, Inc. v. Malady, supra, 55 N.J. at 586.
The judgment in favor of defendants is reversed. The cause is remanded to the Law Division for trial in conformity with this opinion.
NOTES
[1] And also of defendant Rudco Industries, Inc. There was a merger of the two corporations on December 1, 1972.
[2] At the end of 1972 plaintiff's vested interest in the Profit Sharing Trust Fund amounted to $24,216.