**Nancy KATHENES, Plaintiff,**

v.

**QUICK CHEK FOOD STORES; Joyce Beverages of New Jersey, Inc.; Owens-Illinois Company and the Seven-Up Company, Defendants.**

Civ. A. No. 83–4668.

United States District Court, D. New Jersey.

Oct. 9, 1984.

714

W. Stephen Leary, Morristown, N.J., for defendant Joyce Beverages.

McCarter & English by Andrew T. Berry, Newark, N.J., for defendant Owens-Illinois.

## OPINION

DEBEVOISE, District Judge.

Nancy Kathenes was injured when the cap of a soda bottle flew off and struck her in the eye. She instituted a personal injury products liability suit in state court against defendants, Quick Chek Food Stores, the retailer, Joyce Beverages, the bottler, and Owens-Illinois, the manufacturer of the allegedly defective bottlecap. Following extensive settlement negotiations, an "Order of Judgment" was filed by the state court judge on November 16th, 1983, entering judgment against Joyce and dismissing plaintiff's claims against Quick Chek and Owens. After entry of judgment, the only claims remaining in the case were Joyce's claims for contribution and indemnification from Owens. Owens removed the case to federal court on December 6, 1983.

Owens now moves for summary judgment. Owens admits for purposes of this motion that the blank closure (the bottle cap) involved in this case was shipped by Owens to Joyce. It is undisputed that Owens sent an order acknowledgement form with each order to Joyce.[1] See Dreffer Aff. at paragraph 3. This order form provided at paragraph 8 that the contract between the parties would be governed by

Ohio law. The order form also provided at paragraph 4 that:

> Seller shall not be liable for any breach of this contract, or of any duty or obligation arising out of or relating hereto, in any amount in excess of the contract price of the articles with respect to which such breach occurs, and shall not be liable in any event for loss of contents or for special or consequential damages.

The material facts on Owens' motion are not in dispute.

In order to prevail on a motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A motion for summary judgment may only be granted if there are no remaining issues of material fact which, if believed by the trier of fact, would jsutify a finding for the party opposing that judgment. *Bryson v. Brand Insulation, Inc.*, 621 F.2d 556, 559 (3d Cir.1980). All evidence submitted must be viewed in a light favorable to the party opposing the motion. *Wahl v. Bexnord*, 624 F.2d 1169, 1181 (3d Cir.1980). However, the opposing party may not rest upon the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1139 (3d Cir.1980).

At the outset, it will have to be determined whether New Jersey or Ohio law applies in this case. A federal district court of New Jersey sitting in diversity must apply New Jersey's choice of law rules. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1940); *see e.g.*, *Doyle v. Northrop Corp.*, 455 F.Supp. 1318, 1326 (D.N.J.1978). New Jersey has adopted the Uniform Commercial Code (UCC) which allows the parties to contractually agree as to which forum's laws will

---

1. Joyce has submitted the affidavit of Leon Schien in opposition to Owens' motion. Schien asserts that to his knowledge Joyce does not have a *signed* copy of the order form. There is no dispute, however, that such a form was received with each order.

govern their respective rights and duties. N.J.Stat.Ann. 12A:1–105(1). The only restriction upon this power is that the forum chosen must bear a "reasonable relationship" to the transaction involved. *See* UCC Comment 1 to Section 1–105 *citing Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 47 S.Ct. 626, 71 L.Ed. 1123 (1927). The New Jersey study Comment to Section 1–105 indicates that the "reasonable relationship" requirements of Seeman "would give courts leeway to utilize the 'public policy' considerations set out in the *Shotwell* case." *Shotwell v. Dairymen's League Co-op Association, Inc.*, 22 N.J. Misc. 171 (Dist.Ct.1944) is a pre-UCC case which held that the parties' choice of law would be enforced as long as public policy would not be violated. *Id.* 22 N.J.Misc. at 174, 37 A.2d 420. The New Jersey Study Comment to Section 1–105, thus, incorporated the holding of *Shotwell* into the "reasonable relationship" test of N.J.Stat.Ann. 12A:1–105.

> The parties ... may state that the law of another jurisdiction shall apply to some or all aspects of the contract, and the expressed intention will be given effect by the Courts so long as it does not violate a strong public policy of this state or try to avoid the law of the state for some unconscionable purpose.

*Id.* (emphasis added).

■ Thus, it is necessary to decide in the present case whether the application of Ohio law pursuant to paragraph 8 of Owens' order form would violate any public policy of New Jersey.

Joyce asserts that New Jersey has a strong public policy in favor of applying its own law in products liability cases. *See e.g., Monsanto v. Alden Leeds*, 130 N.J.Super. 245, 326 A.2d 90 (Law Div.1974). Joyce notes that by virtue of the settlement it has become liable to the ultimate consumer, Kathenes. Joyce concludes that the strong public policy in New Jersey of holding manufacturers of component parts strictly liable, *cf. Michalko v. Cooke Color and Chemical Corp.*, 91 N.J. 386, 451 A.2d 179 (1982), dictates that New Jersey law be applied to this case. Joyce's argument totally misses the mark. It is true that New Jersey courts have enunciated a strong public policy to apply New Jersey law in the area of products liability. *See e.g., Monsanto*, 130 N.J.Super. at 245, 326 A.2d 90. However, that is not the issue in this case. Rather, the precise issue is whether there is a strong public policy in New Jersey which would prohibit merchants from assigning risks in a commercial transaction. I conclude that there is not.

After the court in *Monsanto* noted New Jersey's policy reasons for applying New Jersey law to products claims, it nevertheless applied Missouri law in interpreting the contract which disclaimed all warranties and limited the buyer's remedies. "Since the contract specifies the law to govern its interpretation, and public policy does not dictate otherwise, the contract will be interpreted under Missouri law." *Id.* 130 N.J.Super. at 252, 326 A.2d 90. The instant suit is not a case where the seller has limited the remedies of the ultimate consumer. If it were such a case there might be strong policy reasons against applying any law other than New Jersey. However, this is merely a case which involves the allocation of risk between merchants. I find the reasoning of Judge Harding in *Pepsi-Cola Metropolitan Bottling Co., Inc., v. Owens-Illinois Inc.*, to be an accurate statement on the law in New Jersey.

> Between merchants dealing with each other, limiting a commercial loss on its face is not an unconscionable practice. Here the consumer recovered a personal injury claim against Pepsi. This suit seeks to pass off that recovery to Owens. It seems to the Court that two companies, in the roles of the buyer and seller, that the seller may properly say to the buyer: "Look, I'm going to sell you a certain parts item that you need. In the course of your manufacture, you take it and do with it what you want. I'm not dealing at first hand with the consumer. You are. I don't want to be bound by the consequential aspects of your sale.

You can insure yourself, or take whatever steps are necessary to protect yourself against a consumer's claim. But I don't want to be bothered with that. I'm selling you bottle caps. Here they are. I'm going to limit my exposure or your remedy against me, to simply recovering, even if I give you a defective one, the cost of the item, itself." It seems to me that's something perfectly proper one corporation can say to another.

*Slip op.* at 15. (Law Div. Middlesex County, November 27, 1978) (attached as an exhibit to Owens' brief). Therefore, I conclude that there is no public policy in New Jersey which would prohibit this Court from applying Ohio law in this case.

■ The threshold issue with respect to the limitation of Joyce's remedies is whether or not the terms and conditions of the order form became part of the contract between Owens and Joyce. I conclude that these terms did become a part of the contract. Although I reach this decision based upon an examination of Ohio law, I note that my decision would be the same under New Jersey law. [2]

Ohio Rev.Code Ann. 1302.10 provides as follows:

(A) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(B) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

In the present case, the initial contract between the parties was oral. Joyce placed the orders by phone. Schien Cert. at paragraph 3. However, each shipment from Owens to Joyce was accompanied by an order form with Owens' terms and conditions of the contract. Dreffer Aff. at paragraph 3. Since both parties to the contract were merchants, Owens' terms and conditions became part of the contract unless they fall within one of the three categories set forth in Ohio Rev.Code Ann. 1302.10(B). Since the offer did not expressly limit acceptance to the terms of the offer and no notification of objection to the terms was ever received by Owens, the terms become part of the contract unless they materially altered the contract.

Joyce asserts that Owens' limitation of remedies excluding incidental and consequential damages is unreasonable and a material alteration. Official Comment 5 to 2–207 indicates that a clause limiting a remedy in a reasonable manner is not a material alteration. The comment cross-references Section 2–719 on the modification and limitation of remedies. Thus, Owens' term limiting Joyce's remedies would be a part of the contract as long as it is reasonable under Section 2–719. [3]

Section 2–719 of the UCC provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment

---

**2.** The same analysis of Section 2–207 of the UCC would be utilized since New Jersey's version of 2–207 is identical to that of Ohio. *Compare* N.J.Stat.Ann. 12A:2–207 *with* Ohio Rev.Code Ann. 1302.10.

**3.** If it is reasonable under 2–719, then it is not a material alteration under 2–207 and hence becomes a part of the contract.

of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Obviously, the draftsmen of the Code contemplated terms and conditions similar to those in the case at bar. Subsection 1(a) explicitly notes that remedies may be limited such as "by limiting the buyer's remedies to return of the goods and payment of price or to repair and replacement of non-conforming goods or parts...." That is precisely what paragraph 4 of the order form indicates.

Seller shall not be liable for any breach of this contract, or of any duty or obligations arising out of or relating hereto, in any amount in excess of the contract price of the articles with respect to which such breach occurs, and shall not be liable in any event for loss of contents or for special or consequential damages.

Joyce contends that the remedy fails its essential purpose and that 719(2) of the UCC applies in the instant case. Joyce argues that the official comment to 2–719 provides that a clause "purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed." UCC Comment 1. Thus, Joyce concludes that Owens' terms and conditions are unconscionable and should be stricken.

Joyce's position is untenable. There is no indication that the remedy provided in Owens' terms and conditions fails its essential purpose. Owens indicated that it would not be liable for any breach beyond the contract price. Joyce has not presented any facts from which I can conclude that this provision has not fulfilled its purpose. To the contrary, the purpose of the provision was to shift the unpredictable risk for consequential damages to Joyce. *See Post-Tape Association v. Eastman Kodak Co.*, 450 F.Supp. 407 (E.D.Pa.1978) (holding that the nature of products' defects is the very reason for adopting such a limitation. *Id.* at 411). That is exactly what it accomplished.

Finally, Joyce argues that the terms may not be enforced because the limitation is unconscionable. Joyce argues, first, that the limitation is prima facie unconscionable under Section 2–719(3) because it limits consequential damages for injury to the person in the case of consumer goods, and, second, that it is unconscionable in that it is oppressive and unreasonable. Joyce's first argument, that the terms limit damages for personal injury in the case of consumer goods, is erroneous. The closures which Owens sold to Joyce were not consumer goods. Consumer goods are defined in the UCC as goods "used or bought for use primarily for personal, family or household purposes." Sections 9–109(1) and 2–103(3). What Joyce purchased was not to be used for personal, family or household purposes. The fact that the closures were ultimately converted into bottles which became consumer goods does not alter the fact that between Joyce and Owens the closures were merely inventory for business use.

Joyce's second argument, that the limitation is unconscionable because it is oppressive, is also without merit. Section 2–302 of the UCC provides that a court may refuse to enforce an unconscionable portion of a contract.

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so

one-sided as to be unconscionable under the circumstances existing at the time of the contract ... The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risk because of superior bargaining power.

UCC Comment 1 to Section 2–302.

There has been no oppressive conduct by Owens in this case—the risk of consequential damages was assumed by Joyce when it accepted the product without any objection to the terms. Nor can Joyce claim unfair surprise. The order form accompanied every shipment, Dreffer Aff. at paragraph 3, and Joyce was aware of the risks it assumed.

The law of Ohio is clear in this area. In *Cyclops Corp. v. Home Insurance Co.,* 389 F.Supp. 476 (W.D.Pa.1975), the Court, applying Ohio law, held that the terms of a contract limiting a seller's liability and excluding consequential damages barred the buyer from recovering lost profits. In granting summary judgment, the Court noted:

> While limitation of damages for injuries to the person in the case of consumer goods is prima facie unconscionable, where the loss is commercial it is not. Therefore, it is necessary for the plaintiff to come forth with evidence to show there is a fact issue as to unconscionability ...
>
> Similarly, as to whether this limitation of damages causes the contract to fail of its essential purpose it appears to the Court that no particular evidence has been presented to establish a disputed issue of fact here. The bargain of the parties was that liability of the manufacturer was limited to the correction of the defect, no matter what the cause or legal basis of the liability. The responding party has produced no evidence to show that such a limitation causes the contract to fail of its essential purpose.

*Id.* at 482–83.

In sum, I conclude that the term of the agreement limiting Joyce's remedies to the contract price and excluding consequential damages is a commercially reasonable term and is not unconscionable. As such, it does not represent a material alteration of the parties' oral agreement, and is, therefore, a term of their contract.

The terms and condition of the Owens order form are enforceable under Ohio law. In *D.O.V. Graphics, Inc., v. Eastman Kodak,* 46 Ohio Misc. 37, 347 N.E.2d 561 (1976), the Ohio Court of Common Pleas held that a seller's limitation of liability to replacement of the defective product was reasonable and enforceable. In *D.O.V. Graphics* the Court noted that the plaintiff had been purchasing defendant's paper for five years, that in the year the defect occurred plaintiff had purchased the paper at least ten times, and that the stated limitation of liability had been known to plaintiff for a long time prior to appearance of the defect.

> A contract can be formed in many ways and whatever way it is formed it still is a contract binding on the parties. While it is true here that there is no evidence that the limitation of the liability was "negotiated," it is equally clear that plaintiff ordered defendant's photographic paper knowing that a defendant had stated in its instructions for the use of the paper and on each package delivered to plaintiff that its liability was limited to replacing any defective paper. The contract, therefore, for the alleged defective paper consisted of plaintiff's order for paper knowing that defendant was limiting his liability for any commercial damages flowing therefrom and its acceptance of the package of paper on which such limitation of liability was set forth. The contract then between the parties included the limitation of liability.

*Id.* 347 N.E.2d at 562–563.

A similar provision was upheld in *Cyclops, supra. See also Avenell v. Westinghouse Electric Corp.,* 41 Ohio App.2d 150, 324 N.E.2d 583 (1974) (holding that clause limiting liability to contract price was enforceable. Id. 324 N.E.2d at 587).

There are no genuine issues of material fact and the law of Ohio clearly holds that

limitations such as those in the present case are enforceable. Therefore, I order that summary judgment be granted in favor of defendant Owens-Illinois and against defendant-cross claimant-plaintiff, Joyce beverages.