**DALE R. HORNING CO., INC., d/b/a Architectural Glass & Metal Co., Plaintiff,**

v.

**FALCONER GLASS INDUSTRIES, INC., Defendant.**

**No. IP 88–502–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 11, 1989.

Heather McPherson, Kothe Claycombe Kortepeter & McPherson, Indianapolis, Ind., for plaintiff.

Gerald A. Wunsch, White & Raub, Indianapolis, Ind., for defendant.

## ORDER ON MOTION TO DISMISS

McKINNEY, District Judge.

This cause comes before the Court on the defendant's motion to dismiss for want of personal jurisdiction and for failure to state a claim.[1] The issues raised have been fully briefed and the matter is ready for resolution. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss or alternative motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are for the most part undisputed. As taken favorably for the plaintiff on this motion to dismiss, they are as follows:

The plaintiff, Architectural Glass & Metal Company ("AGM"), is an Indiana corporation. Defendant Falconer Glass is a New York corporation that manufactures Spandral, a type of glass containing a ceramic backing. Both parties are merchants as the term is used in the Uniform Commercial Code. On August 4, 1986, AGM telephoned Falconer concerning the possibility of purchasing Spandral glass from Falconer. Defendant Falconer verbally agreed to sell a shipment of the glass to AGM for use in a construction project in Indianapolis. During the telephone conversation, there was no discussion of limiting remedies or disclaiming implied warranties.

The next day on August 5, 1986, defendant Falconer sent a standard form to AGM. This form noted that it "confirms verbal 8/4/86." The one-page, double-sided form stated a "quotation" for Spandral glass. The reverse side contained 16 different "Terms and Conditions of Sale." The relevant sections purport to govern the buyer's acceptance of the form, limit the buyer's remedies, and force the buyer to bring any actions under the contract in a New York court. The form reads:

7. WARRANTY—We warrant that our tempered glass or mirrors will meet our standard specifications and be free from material defects in manufacture. WE MAKE NO WARRANTY OF MERCHANTABILITY, NO WARRANTY THAT THE MATERIAL SHALL BE FIT FOR ANY PARTICULAR PURPOSE OR USE, AND NO OTHER WARRANTY, EXPRESSED OR IMPLIED. Your exclusive remedy and the limit of our liability for any loss or damage resulting from defective goods, or from any other cause, shall be limited to replacement of the defective material F.O.B. at our plant, or at our option, to refund of the purchase price, and we shall not be liable for any incidental or consequential damages in connection therewith.

8. BUYER'S REMEDIES—If the material furnished to the Buyer shall fail to conform to this contract or to any warranty, the Seller shall furnish instructions for its disposition, and shall replace

---

1. Defendant has also filed a motion to strike portions of an affidavit submitted by the plaintiff. The Court strikes paragraph 4 of the affidavit as it states a legal conclusion. Other objections concerning the affidavit go to weight or credibility and are denied.

such nonconforming material at the original point of delivery.

The Buyer's exclusive and sole remedy on account of or in respect to the furnishing of material that does not conform to this contract, or to any warranty, shall be to secure replacement thereof as aforesaid. In instances where Seller has processed glass supplied by Buyer, Seller's liability shall be limited to the same processing of additional glass to be supplied by Buyer at no cost to Seller, F.O.B. Seller's plant. The Seller shall not in any event be liable for the cost of any labor expended by others on any such material or for any special, direct, indirect, incidental or consequential damages to anyone by reason of the fact that such material does not conform to this contract to any warranty.

15. GOVERNING LAW—All questions arising in connection with this order or the acceptance and acknowledgement thereof or the sale of goods covered thereby shall be resolved in accordance with the laws of the State of New York and any action or suit relating in any way thereto must be brought in the Supreme Court of the State of New York, County of Chautauqua.

*See* Falconer Form.

Thereafter, defendant Falconer delivered a shipment of Spandral to AGM on September 23, 1986. The goods were defective, AGM notified Falconer of the problem, and Falconer agreed to replace the defective goods. Falconer also promised to pay any consequential damages that AGM incurred. The order was not fully corrected until February of 1987. During the interim, AGM incurred consequential damages in an amount of some $19,000.

Based on these facts, plaintiff filed its two-count complaint seeking recovery from Falconer. In Count One, AGM alleges that defendant breached its contract and is liable for resultant consequential damages. In Count Two, plaintiff asserts that defendant is liable in common law fraud for promising to pay consequential damages on or about September 23, 1986, when it knew it had no intent to pay such damages.

## II. CHOICE OF LAW

A preliminary issue to be addressed is which state's law applies to this action. Even before reaching the matter of whether the choice-of-law provision contained in Falconer's form is applicable, it is necessary to first decide which law will be applied to determine if that choice-of-law provision (and all other relevant provisions) is a part of the agreement in this case. In general, where there is no difference in the states' laws, a choice of laws analysis is unnecessary. That is the case here, for both states have adopted the Uniform Commercial Code, and it has not been shown that there are any differences in New York's and Indiana's interpretations of any relevant provisions, nor is there any difference shown with respect to the common law fraud claim.[2] Accordingly, because

---

**2.** If a choice of law analysis were to apply because of some difference in local laws, the Court would apply Indiana law. In deciding what law to apply to a diversity action, this Court must use the forum state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Indiana's choice of law rules for contract litigation invoke the most intimate contacts approach. *See Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623 (Ind.App.1983); *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind.App.1981). " 'The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.' " *Eby*, 455 N.E.2d at 626 (*quoting W.H.*

*Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945)).

In this case the facts are in most intimate contact with the State of Indiana. Plaintiff initiated the contract from Indiana, plaintiff is incorporated under the laws of Indiana, its principal place of business is in Indiana, and its representatives are based in Indiana. Plaintiff's primary business is in in Indiana, and the goods in question were delivered to Indiana for installation in an Indiana building. Any consequential damages were incurred at the Indiana jobsite. While defendant Falconer has similar contacts with New York, the Court finds that the balance of contacts weighs in favor of Indiana. Accordingly, Indiana substantive law would apply to this action. If tort choice of law rules were invoked because of the fraud count, the

there has been no showing of a conflict in laws, this Court will look to interpretations of the U.C.C. from Indiana and other jurisdictions.

## III. BATTLE OF THE FORMS: U.C.C. § 2–207

### A. *Introduction:*

This case is another illustration that in today's business world, parties to a contract for the sale of goods rarely "agree" to many of the terms of their contract. Rather, as happened in this case, the parties often reach an oral agreement as to product, price, and place of shipment, with their preprinted forms to follow in the days following the agreement. Fortunately in this case there is only one standard form involved, so we have a conflict only between an oral agreement and the terms of the form rather than an oral agreement and the parties' competing forms. The case calls for what is in theory a straightforward application of § 2–207 of the U.C.C.[3]

 Section 2–207 of the Code "has called a truce in the so-called battle of the forms and has effectively abolished the mirror image rule" under which the offer and acceptance had to match exactly. Greenberg, *Rights and Remedies Under U.C.C. Article 2,* 69 (1987). This section provides the following rules:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made condi-

tional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. *Between merchants such terms become part of the contract unless:*

(b) they materially alter it....

§ 2–207(1) & (2)(b) (emphasis added).

This section is intended to deal with two typical situations. The first is where an offer has been made and the acceptance comes by way of a standard form. The second is where the parties have already reached an agreement and the standard form is merely a "confirmation" of that agreement. *See* § 2–207, *Official Comment 1;* Greenberg, *Rights and Remedies* at 70.

In this case the Court is presented with the latter scenario. The plaintiff's complaint and affidavit establish that an oral agreement was reached over the phone on August 4, 1986. The defendant does not dispute this. Indeed, the defendant's own standard form indicates that it "confirms verbal 8/4/86." Where an agreement already exists, the subsequent form is nothing more than a confirmation and the Court's inquiry is not whether a contract exists. Rather, the focus is on the terms of the contract.[4]

"The only real question when a confirmation is involved is whether the additional terms became part of the agreement under § 2–207(2)." Greenberg, *Rights and Remedies* at 77. "If only one confirmation is sent and it contains an *additional* term, the general rules of § 2–207(2) apply." *Id.* (emphasis in original). "If both [parties]

---

end result would be the same. *See Hubbard Mfg. Co. v. Greeson,* 515 N.E.2d 1071 (Ind.1987).

**3.** For simplicity sake, the Court will refer to the U.C.C. and cite its provisions in short form. These sections are located within Indiana's statutory scheme at Ind.Code Ann. § 26–1–2, *et seq.*

**4.** As Professor Greenberg explains:

A confirmation differs from an acceptance in that if it is a true confirmation, a contract between the parties already exists. That contract may be oral or written, but it does preexist the sending of the confirmation. It does not matter if the confirmation is called by

that name or is called a purchase order, acknowledgment, or anything else. As is discussed in this chapter on the statute of frauds, a confirmation may be required in order to satisfy the statute when the prior agreement is oral.

Since there already is a contract that is being confirmed, the court need not determine if there has been an acceptance to an offer under § 2–207(1). Therefore, if the confirmation attempts to condition the existence of a contract on agreement to additional or different terms which are contained in it, that attempt will be unsuccessful.

Greenberg, *Rights and Remedies* at 76–77.

are merchants, it becomes part of the contract unless it materially alters the contract or is objected to." *Id.*

Thus, in this case, because an oral contract was created on August 4, 1986, the defendant's standard form of August 5, 1986, was a confirmation. Because both parties are merchants, each additional term of that confirmation became a part of the parties' agreement unless such term materially altered their preexisting contract.

An additional term materially alters a preexisting contract "if its incorporation into the contract without express awareness by the other party would result in surprise or hardship." *Maxon Corp. v. Tyler Pipe Industries, Inc.,* 497 N.E.2d 570, 576 (Ind.App.1986); Greenberg, *Rights and Remedies* at 75; Annot., *What are Additional Terms Materially Altering Contract Within Meaning of UCC § 2–207(2)(b),* 72 A.L.R.3d 479, 483 (1976). The Official comments provide examples of additional terms that would normally materially alter an agreement, and these include:

— a clause negating such standard warranties as that of merchantability of fitness;

— a clause reserving to the seller the power to cancel upon the buyer's failure to meet any invoice when due; or

— a clause requiring that complaints be made in a time materially shorter than customary or reasonable.

§ 2–207, *Official Comment 4.*

Examples of clauses which normally would not materially alter a preexisting contract include:

— a clause setting forth and perhaps enlarging slightly upon the seller's exemption due to supervening causes beyond his control;

— a clause fixing a reasonable time for complaints within customary limits within customary limits; or

— a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance "with adjustment" or otherwise limiting remedy in a reasonable manner.

§ 2–207, *Official Comment 5.*

▆▆▆ Based on these general guidelines, the Court will now address each clause of Falconer's standard form individually to determine whether it materially altered the oral agreement of August 4, 1986.[5]

B. *Forum Selection Clause—Personal Jurisdiction:*

▆▆▆ Defendant argues that its forum selection clause purporting to require all suits to be brought in a New York court does not materially alter the contract. Thus, defendant argues, because the existence of an enforceable forum selection clause will deprive a federal court of personal jurisdiction, *Andrews v. Heinold Commodities, Inc.,* 771 F.2d 184, 188 (7th Cir.1985), this Court lacks personal jurisdiction and the action must be dismissed under Rule 12(b)(2).

The Court, however, finds as a matter of law in this case that the forum selection clause materially alters the oral contract.[6]

---

**5.** It takes no great discussion to show that Clause 1 of Falconer's standard form agreement, which purports to make the additional terms binding on AGM if AGM fails to object within three days, materially alters the parties' oral contract of August 4, 1986, and thus is not a part of their agreement. Such a clause in essence says that "despite our contract, we have no contract, and you will hereby be deemed to have accepted our new offer if you do not object to this offer within three days." Such a clause clearly materially alters their pre-existing oral contract and is of no effect.

**6.** As is discussed below, the question of whether a certain clause materially alters a contract is

generally regarded as a question of fact to be determined at trial. This presents certain difficulties on a Rule 12(b)(2) motion to dismiss for want of personal jurisdiction when the clause in question determines whether the case will go to trial in this Court or another court. A strange scenario is presented if the question of whether the forum selection clause is a part of the contract is a question of fact.

In such a case, this Court would have to wait until trial for the jury to decide whether the forum selection clause materially altered the contract. If the jury found that it did not, then this clause would be a part of the contract and this Court would lack jurisdiction over the de-

At the time of contracting on August 4, 1986, the plaintiff had every reason to expect that it could sue Falconer for any future breach of contract in an Indiana state or federal court, as well as a New York state or federal court. The forum selection clause, though, would limit their choice of forum to a New York state court. This limitation is certainly the type that would surprise the plaintiff or work it hardship.

The only cases located that deal with this precise question support this conclusion. For instance, in *Product Components v. Regency Door and Hardware*, 568 F.Supp. 651 (S.D.Ind.1983), Judge Steckler determined that a forum selection clause that would have required an Indiana plaintiff to sue in Florida constituted a material alteration. The Court reasoned that "selection of a distant forum with which a party has no contacts, while enforceable if contained in an agreement freely and consciously entered into, can result in surprise and hardship if permitted to become effective by way of confirmation forms that are all too often never read." 568 F.Supp. at 654. "Subtle differences in courts, jurors and law among the states and considerations of litigation expense are factors the Court believes most merchants would consider important." *Id. Accord, General Instrument Corp. v. Tie Manufacturing, Inc.*, 517 F.Supp. 1231 (S.D.N.Y.1981) (forum selection clause constitutes material alteration under § 2–207).

Judge Steckler's reasoning is applicable here, and defendant's attempts to distinguish the case are unavailing. Accordingly, because the forum selection clause would materially alter the contract, it is not a part of the parties' agreement. Personal jurisdiction is thus proper over the defen-

dant, and the defendant's 12(b)(2) motion to dismiss is DENIED.

## C. *Exclusion of Consequential Damages and Limitation of Warranty of Merchantability of Fitness:*

The standard form also purports to exclude consequential damages from the buyer's list of remedies. Because AMG's complaint on the contract seeks solely the recovery of such damages, defendant argues that the exclusion of consequential damages precludes the plaintiff's action under Rule 12(b)(6).

The focus, again, is on whether the purported limitation of remedies materially alters the parties' oral agreement. The Official Comments are inconclusive on this subject at best. On the one hand, Comment 4 provides that "a clause negating such standard warranties as that of merchantability of fitness or fitness for a particular purpose in circumstances in which either warranty normally attaches" would normally materially alter a contract. On the other hand, Comment 5 provides that "a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance 'with adjustment' or otherwise limiting remedy in a reasonable manner (see Sections 2–718 and 2–719)" would not materially alter a preexisting agreement. Thus, while it is clear in this case that the purported disclaimer of the implied warranty of merchantability is not a part of the contract, *see, e.g., Twin Disc, Inc. v. Big Bud Tractor*, 772 F.2d 1329, 1334 (7th Cir.1985) (warranty disclaimers constitute material alterations of a contract), it is not immediately clear wheth-

---

fendant. After conducting a full trial, the case would have to be sent to New York to start over.

The Court is unable to locate any authority that expressly discusses this unique situation. Nonetheless, the Court is guided by several factors in determining that it has the power to make this initial decision without the benefit of a jury. First, the issue is raised by way of a Rule 12(b)(2) motion to dismiss. The courts routinely decide so-called factual issues under 12(b)(2) guises to determine whether the action can proceed. Thus, the nature of the motion

seems to admit of an altered standard in this case. Second, even though many cases state that the question of material alteration is a question of fact, there are instances in which the question is treated as one of law. *See, e.g., Maxon*, 497 N.E.2d at 577 (finding material alteration as a matter of law, and citing other cases finding alteration a legal question). Based on these principles, the Court concludes that it can (and, perhaps must) decide the question of whether the forum selection clause material alters the agreement as a matter of law.

er the exclusion of consequential damages materially alters the oral agreement.

The Court has located decisions which go each way on this issue. For instance, in *Air Products and Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414 (1973), the Wisconsin Supreme Court held that an attempt to limit consequential damages materially altered a contract under § 2–207 and was not binding on the buyer. The *Air Products* court reasoned that under § 2–715, consequential damages are ordinarily recoverable (absent agreement otherwise) for " 'any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know....' " 206 N.W.2d at 424 (*quoting* § 2–715(2)(a)).[7]

Thus, the *Air Products* court reasoned, because consequential damages are ordinarily available absent disclaimer, such a disclaimer would be a material alteration of an agreement that did not originally contemplate such a limitation. The court summed up its decision, writing, "We conclude that the disclaimer for consequential loss was sufficiently material to require express conversation between the parties over its inclusion or exclusion in the contract." 206 N.W.2d at 425. *Accord, Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765 (10th Cir.1983) ("A limitation of remedy generally constitutes a material alteration"); *Westinghouse Electric Corporation v. Nielsons, Inc.*, 647 F.Supp. 896 (D.Colo.1986) (noting that the limitation of consequentials would materially alter a contract under 2–207); *Album Graphics, Inc. v. Beatrice Foods Co.*, 87 Ill.App.3d 338, 42 Ill.Dec. 332, 339, 408 N.E.2d 1041, 1048 (1980) ("A term disclaiming warranties, and we might add a term limiting

remedies, is undoubtedly a term that materially alters a contract.").[8]

On the other hand, in *Kathenes v. Quick Chek Food Stores*, 596 F.Supp. 713 (D.N.J. 1984), the court ruled that a clause limiting consequential damages would not materially alter a contract and was thus binding on both parties. The *Kathenes* court relied heavily on the fact that Official Comment 5 of § 2–207 states that a clause limiting a remedy in a reasonable manner is not a material alteration. 596 F.Supp. at 716. The court wrote, "The comment cross-references Section 2–719 on the modification and limitation of remedies. Thus, [seller's] term limiting [buyer's] remedies would be a part of the contract as long as it is reasonable under Section 2–719." *Id.*

While this Court recognizes that Official Comment 5 does, in fact, make reference to § 2–719, the Court does not find that it necessarily follows that any limitation of consequential damages does not "materially alter" the parties' contract (§ 2–207 language) just because the limitation would be "reasonable." (§ 2–719 jargon). The focus under the language of § 2–207 is whether the new term, here limiting consequentials, would surprise or work hardship on the buyer. The question is whether the additional term materially alters the parties' oral contract in this case. In this Court's opinion, the fact that such a clause may be "reasonable" under the U.C.C.'s remedy provisions does not dictate the outcome of the contract formation analysis under § 2–207. Rather, the question remains whether such a limitation would surprise or work a hardship on the buyer; the issue of reasonableness is properly viewed as just one aspect of this material alteration analysis.

**7.** The Official Comment further provides, "[T]he seller is liable for consequential damages in all cases where [the seller] had reason to know of the buyer's general or particular requirements at the time of contracting." § 2–715, *Official Comment 3.*

**8.** The Court notes in passing that the principal case relied on by the plaintiff, *Western Industries, Inc. v. Newcor Canada Ltd.*, 739 F.2d 1198 (7th Cir.1984), is inapposite here. The court there stated in dicta that "remedy terms, such as

that which allow consequential damages," cannot be changed without materially altering a contract under § 2–207. However, the *Western Industries* court did not actually decide this issue, and the authority it cites for its proposition does not support its statement. The court cited to Official Comment 6 of § 2–207 for this proposition, but Comment 6 does not speak to material alteration. Only Comments 4 and 5 do, and as noted previously, these Comments are conflicting on this issue at best.

According to a number of courts, this analysis is one to be conducted by the trier of fact. The Tenth Circuit, for instance, has written that the "issue of whether a term materially alters the contract for the purposes of § 2–207(2)(b) is a question of fact that must be determined in light of the facts of the case and the parties' expectations." *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765 (10th Cir.1983). *Accord, ICI Australia Ltd. v. Elliott Overseas Co.*, 551 F.Supp. 265, 269 (D.N.J.1982) (court notes that material alteration is a question of fact not appropriate for summary judgment); *Wheaton Glass Company v. Pharmex, Inc.*, 548 F.Supp. 1242, 1245 (D.N.J.1982) (same). As Professor Greenberg confirms, "Whether a particular term does or does not materially alter the contract is usually a question of fact that will be determined on a case by case basis." Greenberg, *Rights and Remedies* at 75.

So it is in this case, for the Court cannot say as a matter of law that the limitation of consequential damages does not materially alter the contract. Nor, for that matter, can the Court yet decide that the disputed clause does materially alter the agreement such that it is out of the contract. Although it is clear that such limitations are often found to materially alter an agreement, the question remains one of fact until such time, if any, that the buyer can establish such a material alteration as a matter of law.

Accordingly, because the seller has not established that the limitation of consequential damages is a part of the contract as a matter of law, the motion to dismiss (or alternative motion for summary judgment) must be DENIED.

### IV. COMMON LAW FRAUD

The final issue is whether Count Two of the complaint fails to state a claim for relief for common law fraud. In Count Two, plaintiff alleges that Falconer "represented to plaintiff AGM that Falconer would correct the defective shipment ... and that all additional and consequential expenses incurred by AGM would be paid by Falconer." Moreover, plaintiff charges, Falconer made such a representation knowing it to be false, and with the intent to have AGM rely on the misrepresentation to AGM's detriment.

It is well settled that a promise to do something in the future will not support a claim for fraud. *See Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 628 (Ind.App.1983); *Vaughn v. General Foods Corp.*, 797 F.2d 1403 (7th Cir.1986); *Whiteco Properties, Inc. v. Thielbar*, 467 N.E.2d 433 (Ind.App.1984). The Indiana courts have held time and again that actionable fraud cannot be predicated upon a promise to do a thing in the future, even if the promisor has no intention of fulfilling his obligation.

In this case it is clear that the Count Two of AGM's complaint must fail because it alleges nothing more than a promise to do something in the future. While this promise may well form the basis for a separate contract or modification of a prior contract, it does not support a theory of fraud.

Accordingly, the defendant's motion to dismiss Count Two for failure to state a claim is GRANTED, and Count Two is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.