**J. F. PRITCHARD AND COMPANY, Appellant,**

v.

**DOW CHEMICAL OF CANADA, LIMITED, Appellee.**

No. 71–1552.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1972.

Decided June 29, 1972.

amine the vehicle even though there was ample time to do so."

James F. Duncan, Kansas City, Mo., Allan L. Bioff, Kansas City, Mo., Thomas R. McDade, Houston, Tex., for appellant; Watson, Ess, Marshall & Enggas, Kansas City, Mo., Fulbright, Crooker & Jaworski, Houston, Tex., of counsel.

John C. Thurlo, Kansas City, Mo., Richard K. Andrews, Kansas City, Mo., for appellee; Swanson, Midgley, Eager, Gangwere & Thurlo, Kansas City, Mo., of counsel.

Before Mr. Justice CLARK,* and VOGEL and LAY, Circuit Judges.

Mr. Justice CLARK.

This appeal is here on a dismissal, without prejudice, on the ground of forum non conveniens of the complaint of appellant J. F. Pritchard and Company to recover an alleged balance of $339,000 due to appellant assignee of its subsidiary, Pritchard Canadian, Ltd. on a contract performable in Canada between the subsidiary and the appellee Dow Chemical of Canada, Ltd. The trial judge, in a first-rate opinion, concluded that even though the assignment by Pritchard Canadian, Ltd. to J. F. Pritchard & Co. "is legally sufficient to establish jurisdiction in this Court, it is clearly apparent that, considering all relevant factors, jurisdiction should be declined by this Court under the doctrine of forum non conveniens." J. F. Pritchard and Company v. Dow Chemical of Canada, Ltd., 331 F.Supp. 1215 (1971). We agree and the judgment is affirmed.

1. The doctrine of forum non conveniens as enunciated in 28 U.S.C.A. § 1404(a) states: "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Only the year before the Supreme Court had held that the doctrine was available in federal courts and that a court could dismiss a suit though it had jurisdiction and venue if there existed another forum so much more convenient for the parties and the courts that the plaintiff's privilege of choosing his forum was outweighed. Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207 (1949). Most of the decisions following Collett and Section 1404(a) reflect how a court has weighed

---

* Associate Justice Tom C. Clark, United States Supreme Court, retired, in sitting by designation.

the various factors involved in a dismissal or transfer. It is clear, however, that the problem is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation." Lykes Bros. SS Inc. v. Sugarman, 272 F.2d 679 (2 Cir. 1959). The same circuit earlier had quipped with reference to the problem that at best the judge must guess, and we should accept his guess unless it is too wild. At 680. And Mr. Justice Jackson put it both more sedately and clearly in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), when he said that *forum non conveniens* means "simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute . . . A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." At 507, 67 S. Ct. at 843. And, he added:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses."

My brother Jackson then proceeded to adumbrate some factors to be considered including the private interest of the litigant; the relative ease of access to sources of proof; the availability of compulsory process on the unwilling and the cost of obtaining the presence of the willing witnesses, documents, etc.; the possibility of viewing the premises involved and "all other practical problems that make trial of a case easy, expeditious and inexpensive," such as the enforceability of a judgment once obtained and the relative advantages and obstacles to fair trial. At 508, 67 S.Ct. at 843. Finally, the Justice admonished: "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." We believe that this is one of those rare instances.

In its opinion the district court outlined the factors it considered controlling i. e. the contract was executed by Canadian companies in Canada and was performable there, with the sole exception of "some of the design work" that was done in Missouri; none of the equipment suppliers were located in Missouri nor was any of the fabrication or construction work done there; and finally, that the majority of the work under the contract was done in Ontario, Canada. The opinion also noted that the contract calls for the application of Canadian law and that any judgment obtained in Missouri would have to be enforced in Canada. It also pointed out that a suit was pending in the Ontario Supreme Court involving the construction of the plant involved in the contract in which all of the parties involved, including appellant, were before the Canadian court. We believe it might be helpful if we added a short statement to the able discussion given the problem by the trial judge.

2. The negotiations leading up to the contract providing for the designing, engineering and construction of the Dow plant in Canada were initiated by Dow in 1964 and were held largely in Kansas City, Missouri. At the specific instance of the appellant, the contract was drawn in the name of appellant's Canadian subsidiary, Pritchard Canadian, Ltd. and was executed by the latter and Dow in Canada on September 23, 1964. However, Pritchard Canadian, Ltd. had only a few employees in Canada, primarily salesmen and clerks and appellant therefore opened a construction office there on December 14, 1964, and continued to maintain it until after the Dow plant was completed i. e. August 10, 1965. Appellant did perform at Kansas City most of the design, engineering, drafting, job cost appraisal, schedules of materials required, solicitation of quotations thereon, bill analysis, vendor selection on major equipment to be fabricat-

ed, expedition and inspection of material shipped by U.S. vendors and suppliers. All of the remaining work was sublet to other concerns, including Joy Manufacturing Company of Pittsburgh and Ingersoll Rand Company of New York and performed by them. The supervision of the entire job required appellant's continuous presence and activity at the job site in Canada all during the building and installation of the plant. As early as September 22, 1965, the appellant had made an on site survey of the defects that Dow had reported to it with regard to the operation of the plant and on this date a detailed report of its findings was made. Dow stopped making payments to Pritchard Canadian, Ltd. on the contract because of the failure of the plant to operate satisfactorily and according to the terms of the contract. Meetings were held between the principals of the companies and their legal counsel to bring about a settlement; Dow's solicitors had prepared and were ready to file suit as early as October 9, 1969, but upon the specific request of the Pritchard group the action was postponed while the latter made further technical investigation and approached Joy and Ingersoll Rand with regard to their participation in a settlement. Thereafter appellant made settlement proposals, and Dow asked time to consider them. On December 16, 1969, Dow made a counter offer which was refused on the following day, and this suit was filed. On December 18, 1969, appellant notified Dow by telephone that this suit had been filed on the previous day. On December 19 Dow filed its complaint in the Ontario Supreme Court.

Dow's suit in the Ontario court is for breach of contract and damages. In addition to the appellant, its subsidiary, Pritchard Canadian, Ltd. is made a party defendant, along with Joy Manufacturing Company and Ingersoll-Rand, as well as two individuals. The breach of the agreement, Dow alleges, results from a failure of the plant design to provide a facility capable of producing 400 tons of anhydrous ammonia each day—the minimum agreed upon—and the failure of appellant and Pritchard Canadian, Ltd. to exercise reasonable care and skill in supervising the construction and installation of the plant. As to Joy, Dow says that by sub-contract, Joy was to install a Joy turbo-dynamic compressor in the Dow Canadian plant according to certain specifications, but that it negligently carried out the design and installation of the same. As to Ingersoll-Rand Dow claims that it was to install certain reciprocating compressors which likewise were faulty in design, installation etc. The two individuals included as defendants in the suit, are Walter W. Deschner, an official, and R. M. Harris, an employee of appellant, each of whom was responsible for the design, engineering and supervision of the construction and installation of the plant.

Dow also claims in its Ontario Supreme Court suit that it never received notice of the assignment of the balance due on its contract with Pritchard Canadian, Ltd. until the appellant filed this suit in Missouri; nor has the assignment been filed in Missouri as required by the Uniform Commercial Code. It further appears that all of the defendants, save the two individuals, in the Canadian suit, including appellant, have filed an answer, together with cross and party action claims and additional parties have been impleaded, as heretofore shown. Indeed all of the corporate defendants, including appellant, have filed affirmative defenses against Dow, alleging that it negligently operated the plant from the beginning and thereby brought all of the damage upon itself. In addition, Ingersoll-Rand's answer includes a third party action against Pritchard Canadian, Ltd. and appellant alleging faulty design, engineering and supervision of the plant and asking judgment over against both parent and subsidiary. It has also impleaded General Electric Company, American Radiator-Standard Sanitary Corporation and Burgess Industries, Incorporated, complaining of faulty design, workmanship and materials on the machines, supplies,

etc. that it bought from them in their performance of their contract with Pritchard Canadian, Ltd. Joy has also filed a party action, in addition to its defenses against Dow. Its fourth party action is against Pritchard Canadian, Ltd. and appellant, alleging faulty design, engineering and installation on the Dow plants and praying for judgment over against both parent and subsidiary in the event Dow prevails against Joy. Finally, appellant itself has filed answer setting up as defenses against Dow's claim some twenty acts of negligence on the part of Dow in the operation of the plant, all of which it says caused the damages sued for. It also alleges party claims against its co-defendants and calls for contribution in the event Dow prevails. Canadian solicitors by affidavit say that appellant could have sought collection of its alleged debt against Dow in Dow's action in Canada but appellant has not pursued this course. They also aver that appellant could maintain an original action in the Supreme Court of Ontario for debt and thereafter move for consolidation with Dow's suit.

As we view it there is more in appellant's suit for debt than meets the eye. Inextricably intertwined with it is Dow's claim of faulty design, engineering, material, machinery and installation of the plant on which appellant's claim rests. Dow has no quarrel on the debt provided Pritchard Canadian, Ltd. performs what it contracted to do. The entire controversy is now being litigated in Canada with all of the principals involved and half a dozen sub contractors now before that court. Appellant desires to spin off its alleged debt and litigate it—small though it is by comparison—in another court. As we see it the controversy is one ball of wax and appellant should not be permitted to spin off this little satellite that it claims by assignment. Its claim is part and parcel of the whole controversy, and the overwhelming percentage of proof—both by witness and documents—being in Canada, it can only proceed there. After all,

appellant chose to make its Canadian subsidiary the sole performing party to the contract; it is located in Canada; appellant performed the contract there; and Canadian law was chosen by appellant to apply to all interpretations of it. Thus there is more than a Canadian nexus here. The whole case is Canadian. Appellant made his bed in Canada; now he must lie in it if he wishes to proceed.

Affirmed.