**M & D ENTERPRISES, INC.,
Plaintiff-Respondent,**

**v.**

**H. C. FOURNIE, d/b/a H. C. Fournie Company, and Hilbert C. Fournie Company, Defendants-Appellants,**

**and**

**M & D ENTERPRISES, INC., Plaintiff and Third-Party Plaintiff-Appellant,**

**v.**

**BASIC CHEMICALS, a division of Basic, Inc., a corporation, Third-Party Defendant-Respondent.**

**Nos. 11146, 11147.**

Missouri Court of Appeals,
Southern District,
Division Four.

April 1, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied April 18, 1980.

Application to Transfer Denied
July 15, 1980.

Thomas G. Strong, Mathew W. Placzek, Jr., B. H. Clampett, Richard P. Wacker, Springfield, for plaintiff-respondent & third-party plaintiff-appellant.

John R. Lewis, Milton B. Kirby, Springfield, for defendants-appellants.

David W. Ansley, John E. Price, Springfield, for third-party defendant-respondent.

GREENE, Judge.

M & D Enterprises, Inc. (M & D), a Missouri corporation, manufactures and sells building materials. M & D's management functions are performed in Springfield, Missouri, while its manufacturing and shipping plant is in Iola, Kansas. M & D is the exclusive producer of a cementitious material, known as Boncoat, which is applied to the exterior surface of buildings. After application, rocks are blown into the Boncoat to produce an aggregate finish.

Peter Nichols, a sales manager with M & D, heard of construction to be done on the Warrick Hospital in Boonville, Indiana, which called for an exposed aggregate finish. Nichols contacted the architectural firm of Jones & Feller, which was handling the hospital project, and promoted M & D's product. In March, 1974, the architects sent a preliminary set of plans to Nichols, at the Springfield office, where he and Harvey Davis, president of M & D, looked them over, determined that Boncoat could be used on the project, made some suggestions to the architects, and returned the plans. The final plans called for the use of Boncoat, or equivalent, on the hospital's exterior surface.

Nichols then contacted Wayne Phillips, vice-president of the Hilbert C. Fournie Company (Fournie), a Delaware corporation, at its principal place of business in Belleville, Illinois. He told Phillips about the job in Indiana and urged him to put in a bid for the subcontract on the exterior finish work. Phillips obtained a set of plans from the general contractor, Algernon-Blair, Inc. (Algernon), and submitted a bid on the project. Fournie was awarded the subcontract to do the exterior work on the Warrick Hospital. M & D was not a party to the subcontract between Algernon and Fournie. The subcontract called for the use of Boncoat.

On July 12, 1974, Phillips, who was in Illinois, telephoned M & D and ordered 1400 bags of Boncoat for the Warrick project. An additional 501 bags were telephone ordered at a later date. On November 13, 1974, 100 pounds of retarder and 1000 feet of expansion joint were also telephone ordered for the Warrick project. All of this material was delivered between September 12, 1974 and December 31, 1974, some to Belleville, Illinois and some to Boonville, Indiana. After a telephone order was received by M & D, and verified by either Nichols or Davis, a shipping order was sent by them to the plant in Kansas, with a copy being sent to Fournie as verification of the order. After each order was filled and shipped, the Springfield office sent an invoice to Fournie. Phillips never visited M & D's office in Springfield for any purpose in connection with these transactions.

Prior to the first delivery of material, Phillips and Nichols exchanged telephone calls regarding the use of retarder when mixing the Boncoat. In October, 1974, problems began to develop with the Boncoat at the job site in Boonville. (Basically, Fournie claims that the Boncoat was improperly prepared at M & D's plant in Kansas; M & D claims that the Boncoat was improperly mixed by Fournie at the job site.) Phillips telephoned Nichols and Davis from Illinois to complain about the job problems. Additional expense was incurred by Fournie in attempting to correct the problem for which they billed M & D. Payment of the bill was refused by M & D. Fournie claimed that the Boncoat was defective and refused to pay for any of the materials which it received from M & D. M & D claimed a balance due from Fournie of $27,949.05 on the purchase price of the materials.

M & D brought suit in the Circuit Court of Greene County seeking payment of the purchase price, interest, attorney's fees, and costs. Fournie filed a motion to quash service of summons claiming that the Circuit Court of Greene County did not have personal jurisdiction over Fournie under § 506.-500, RSMo 1969. The motion was overruled. A later filed motion to dismiss, or alternatively to quash the service of summons, was also overruled. Fournie then

answered, denied contract liability, and counterclaimed for breach of an implied warranty of merchantability and fitness for a particular use. After being served with the counterclaim, M & D filed a third-party action against Basic Chemicals (Basic), an Ohio corporation, claiming that materials supplied to M & D by Basic, which were mixed with the Boncoat at M & D's plant in Kansas, were the cause of any defect in the Boncoat material for which M & D might be liable to Fournie.

Trial by jury was held in the Circuit Court of Greene County. The claim against H. C. Fournie, as an individual, was dismissed at the close of plaintiff's case. The jury returned verdicts in favor of M & D on its claim against Fournie, against Fournie on its counterclaim against M & D, and against M & D on its third-party claim against Basic. Fournie appeals from the judgment against it ( # 11147), and, if Fournie should be successful, M & D appeals from the judgment against it on the third-party claim ( # 11146). Basic has moved to dismiss M & D's third-party appeal. The motion is overruled. Fournie raises several points of error, the first of which is that the trial court committed prejudicial error in failing to sustain Fournie's motions to quash service, and to dismiss for lack of jurisdiction. Since we find this point dispositive of the issues in this case, we do not reach the other points of alleged error.

Section 506.500, RSMo 1969, relied on by plaintiffs to confer jurisdiction over nonresident defendant Fournie, states:

"1.  Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting.

2.  Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

M & D argues that Fournie is subject to the jurisdiction of our courts under either § 506.500.1(1), the transacting of any business in Missouri, or § 506.500.1(2), the making of any contract in Missouri. Fournie argues that it is not. The precise question is whether the telephone calls made from Illinois by Fournie's agents are sufficient minimal contacts with Missouri to invoke jurisdiction under the long-arm statute.

■ Because of the constitutional questions involved, it is necessary for us to look to both state and federal law to resolve this issue. The United States Supreme Court has held, "that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum", due process requires that "he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Also, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of the rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283, 1298 (1958). The defendant's conduct and con-

nection with the forum state must be such that he should reasonably anticipate being "haled into court" there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). Our own state supreme court has interpreted § 506.500 as only expanding "the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970).

Thus, in order for our courts to have personal jurisdiction over a nonresident defendant, we must determine (1) that defendant's acts fall within one of the categories enumerated in § 506.500.1, and (2) that those acts are sufficient minimum contacts with Missouri such the the exercise of jurisdiction by Missouri courts would satisfy the requirements of due process. *First National Bank of Kansas City v. Ward*, 380 F.Supp. 782, 783–784 (W.D.Mo.1974). We do not believe that this dual test has been met under the facts of this case.

In looking to see whether a nonresident defendant has made sufficient minimum contacts with Missouri for our courts to acquire personal jurisdiction over him, we must consider five factors: (1) the nature and quality of the contacts with Missouri; (2) the quantity of those contacts; (3) the relationship of the cause of action to those contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. 1215, 1218 (W.D.Mo.1971), aff'd, 462 F.2d 998 (8th Cir. 1972); *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241, 244 (W.D.Mo.1970). Here, the record reflects that Fournie was not registered to do business in Missouri, maintained no office or telephone listing in Missouri, sent no agents into Missouri to order Boncoat, and did not use the Boncoat on any buildings being constructed in Missouri. Except for payment of the purchase price, which was due if the materials were delivered to Illinois and Indiana as warranted by M & D, none of Fournie's contract obligations were to be performed in Missouri. M & D's performance obligations, except for bookkeeping entries, took place outside Missouri. The product was manufactured in Kansas and the orders were filled there. The Boncoat was then shipped directly from Kansas to Illinois and Indiana, where it was to be used. Any warranties associated with the product would be tested and go into effect in those states.

All that Fournie did was place telephone orders for materials, after being aggressively solicited to buy those materials by M & D. Placing a telephone order from one state and agreeing to send payment to a sister state hardly amounts to an act by which a nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, supra, 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298. M & D's "unilateral" bookkeeping activities do not "satisfy the requirement of contact with the forum State." Id. In addition, the facts do not show that Missouri is the more convenient forum. Of the ten witnesses, whose testimony was utilized at trial, one was from California, six were from Illinois, and three were from Missouri.

There is a split of authority in other jurisdictions as to what facts are necessary to provide the essential minimum contacts necessary to comply with due process.[1] The

1. Compare, *Lakeside Bridge & Steel v. Mountain State Const.*, 597 F.2d 596 (7th Cir. 1979); *Anderson v. Shiflett*, 435 F.2d 1036 (10th Cir. 1971); *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320 (7th Cir. 1968); *Orton v. Woods Oil & Gas Co.*, 249 F.2d 198 (7th Cir. 1957); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902 (D.Minn.1971); *Berry v. Jeff Hunt Machinery Co.*, 148 Ga.App. 35, 250 S.E.2d 813 (1978); *Belmont Industries, Inc. v. Superior Ct. of Stanislaus Cty.*, 31 Cal.App.3d 281, 107 Cal.Rptr. 237 (1973); and *Fourth Northwestern Nat. Bank v. Hilson Industries, Inc.*, 264 Minn. 110, 117 N.W.2d 732 (1962), with, *Electro-Craft Corp. v. Maxwell Electronics Corp.*, 417 F.2d 365 (8th Cir. 1969); *Ward v. Formex, Inc.*, 27

thread of reason running through most of the cases, which uphold jurisdiction over nonresident defendants, is that such defendants, through the flow of commerce, have availed themselves of the benefit of commerce within the forum state and have availed themselves of the protection and benefits of the forum state. Therefore, they should be amenable to suit for the consequences of their conduct within the forum state. However, such is not the case here. Fournie, a Delaware corporation with its principal place of business being Illinois, was a buyer, not a seller. It did not enter the state of Missouri or initiate a flow of commerce into Missouri. The flow of commerce was initiated by M & D, by its contact with Fournie in Illinois. M & D sought out Fournie in Illinois, and through aggressive solicitation, sold its product to Fournie. To permit Missouri courts to have jurisdiction in this case would amount to an open invitation to Missouri residents to go into other states, solicit business as an aggressor, and then, as a practical defense to any claim asserted by a nonresident buyer that the product sold was defective, drag the buyer into Missouri courts, as a strategic counter-move, through the use of § 506.-500. Such a practice would violate the traditional notions of fair play and substantial justice, as mandated by *International Shoe*. We cannot believe that the legislature, in enacting § 506.500 intended that it would apply to the factual situation before us.

We hold that the tenuous contacts that Fournie had with Missouri were not sufficient to meet the "minimum contacts" requirement necessary to comply with constitutional due process. *State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31, 35 (Mo. banc 1976). The trial court's orders overruling Fournie's motion to quash summons and to dismiss for lack of jurisdiction of the person were prejudicially erroneous.

The judgment of the trial court in favor of plaintiff and against defendant Fournie is reversed, and the cause is remanded to the trial court with directions to set aside its order overruling defendant Fournie's motion to quash service and to enter an order sustaining said motion. It also follows that, since we have held that the trial court had no jurisdiction over the person of defendant Fournie, the trial court had no jurisdiction to consider the forced counterclaim of Fournie, or M & D's third-party claim against Basic. The judgment against Fournie on its counterclaim against plaintiff and for Basic on M & D's third-party claim against it are also reversed. The trial court is directed to dismiss plaintiff's petition, defendant Fournie's counterclaim, and plaintiff's third-party claim, all without prejudice, so that the parties may seek a proper forum for any claims that they may have against one another.

FLANIGAN, C. J., recused.

MAUS and PREWITT, JJ., concur.

---

Ill.App.3d 22, 325 N.E.2d 812 (1975); *Colony Press, Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974); *Cook Associates, Inc. v. Colonial Broach & Mach. Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1973); *Parish v. Mertes*, 84 Mich.App. 336, 269 N.W.2d 591 (1978); *Anderson, Clayton & Co. v. Atlas Concrete Pipe, Inc.*, 41 Mich.App. 58, 199 N.W.2d 531 (1972); *Prentice Lumber Co. v. Spahn*, 156 Mont. 68, 474 P.2d 141 (1970); and *State ex rel. White Lumber Sales, Inc. v. Sulmonetti*, 252 Or. 121, 448 P.2d 571 (banc 1968). Cases involving our own long-arm statute have required something more than telephone calls to meet the minimal contacts requirement of due process. See, *First National Bank of Kansas City v. Ward*, 380 F.Supp. 782 (W.D.Mo.1974); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. 1215 (W.D.Mo.1971), aff'd, 462 F.2d 998 (8th Cir. 1972); *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241 (W.D.Mo.1970); and *State ex rel. Peoples Bank, etc. v. Stussie*, 536 S.W.2d 934 (Mo.App. 1976).