TRWL FINANCIAL ESTABLISHMENT,
a Liechtenstein corporation,
Plaintiff,

v.

SELECT INTERNATIONAL, INC.,
Defendant and Third Party
Plaintiff, Respondent,

v.

SUPERIOR INTERNATIONAL
TRADING, LTD., Third Party
Defendant, Appellant.

No. C4–94–1615.

Court of Appeals of Minnesota.

Feb. 7, 1995.

Marvin A. Liszt, Minneapolis, for plaintiff.

Robert M. Smith, Minneapolis, for respondent.

Richard N. Indritz, Reed & Pond, Ltd., Mound, Hirsch Weinig, New York City, for appellant.

Considered and decided by CRIPPEN, P.J., RANDALL and SCHUMACHER, JJ.

## OPINION

CRIPPEN, Judge.

This appeal concerns the trial court's holding that Minnesota could exercise personal jurisdiction over appellant under Minnesota's long arm statute or a forum selection clause included in respondent's purchase order. We reverse.

## FACTS

Respondent Select International, Inc. entered into a contract to supply pajamas to TRWL Financial Establishment for shipment overseas. To fulfill its contract with TRWL, Select contacted New York-based Superior International Trading, Ltd. by telephone and negotiated the purchase of over 127,000 pairs of pajamas, with delivery to occur at Mobile, Alabama. Select faxed a purchase order detailing the terms of the agreement and wired its payment to Superior in New York.

The pajamas supplied to TRWL were apparently defective and TRWL sued Select in Minnesota state court. Select served a third-party complaint on Superior, and Superior appeals from the order denying its motion to dismiss the third-party complaint for lack of personal jurisdiction.

TRWL and Select are both Minnesota-based corporations. Superior is a New York corporation with its only office in that state. It has no business address or telephone listing in Minnesota. It has no employees here. It maintains no agent for service of process in Minnesota, and it is not registered to do business in this state. It has no bank accounts or an interest in any real property in Minnesota. This is the first time Superior has transacted business with Select. But between 1984 and 1992 Superior purchased approximately $500,000 of merchandise from Universal International, Inc., another Minnesota-based corporation. It has neither transacted nor solicited any · other business in Minnesota.

## ISSUES

1. Has appellant had sufficient contacts with Minnesota so that Minnesota's exercise of personal jurisdiction over it does not offend its due process rights?

2. Is a forum selection clause added to a confirmatory memorandum part of a sales contract under Minn.Stat. § 336.2–207?

## ANALYSIS

The trial court's order denying Superior's motion to dismiss for lack of personal jurisdiction is an appealable order. *See In re State & Regents Bldg. Asbestos Cases,* 435 N.W.2d 521, 522 (Minn.1989). On established facts, the existence of personal jurisdiction is a question of law that this court reviews de novo. *Stanek v. A.P.I., Inc.,* 474 N.W.2d 829, 832 (Minn.App.1991) *pet. for rev. denied* (Minn. Oct. 31, 1991), *cert. denied* 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992).

Superior having challenged the exercise of personal jurisdiction over it, Select bears the burden of proving a prima facie case supporting jurisdiction. *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). At the pre-trial stage, Select's allegations and evidence supporting jurisdiction must be taken as true. *Id.*

### I. Long Arm Statute

Minnesota may exercise personal jurisdiction over Superior if the requirements of the long arm statute, Minn.Stat. § 543.19 (1992), are met and jurisdiction is consistent

with due process. *Marquette Nat'l Bank v. Norris*, 270 N.W.2d 290, 294 (Minn.1978). Minnesota's long arm statute is intended to confer personal jurisdiction over nonresident defendants to the maximum extent permitted by due process law. *Id.* at 294. Contacts that are extensive enough to satisfy due process are sufficient to satisfy the requirements of the long arm statute. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn.1992).

■ Due process dictates that before Minnesota can exercise personal jurisdiction over a defendant, the defendant must have "minimum contacts" with this state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant must have purposefully availed itself of the privilege of conducting business in this state so as to invoke the benefits and protection of Minnesota laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant must reasonably be able to anticipate that it would be haled into Minnesota's courts. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ In deciding whether there are sufficient "minimum contacts" to satisfy due process, we are to analyze five factors: (1) the quantity of contacts with Minnesota; (2) the nature and quality of the contacts; (3) the source and connection of those contacts to the cause of action; (4) Minnesota's interest in providing a forum; and (5) the convenience of the parties. *National City Bank v. Ceresota Mill Ltd.*, 488 N.W.2d 248, 252–53 (Minn.1992) (citations omitted). The first three factors are primary and the last two factors are to receive lesser consideration. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn.1983).

**A. Quantity of Contacts and Connection to the Cause of Action**

■ If the cause of action arises directly out of Superior's contact with this state, even a single, isolated transaction between the parties can be sufficient to confer personal jurisdiction over it. *Marquette*, 270 N.W.2d at 295. In such a case, Minnesota is said to have "specific" personal jurisdiction. *Valspar*, 495 N.W.2d at 411. Where personal jurisdiction is asserted based on a single, isolated transaction, "the nature and quality of the contact becomes dispositive." *Marquette*, 270 N.W.2d at 295.

■ Superior's only relevant contacts with Minnesota were its telephone and fax contacts with Select that culminated in the sales contract that is the basis for Select's cause of action.[1] Because personal jurisdiction over Superior is asserted based on a single transaction directly related to the cause of action, the nature and quality of the contacts become dispositive.

**B. Nature and Quality of the Contacts**

In evaluating the nature and quality of the contacts, we are to attempt to ascertain whether Superior has purposefully availed itself of the benefits and protection of Minnesota law. *Dent–Air*, 332 N.W.2d at 907. The question is whether Superior had "fair warning" of being sued in Minnesota. *Real Properties, Inc. v. Mission Ins. Co.*, 427 N.W.2d 665, 668 (Minn.1988) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985)). Superior had "fair warning" if it "purposefully directed" its activities at residents of this state. *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). Incidental contacts as a result of unilateral activity by

---

1. Contacts with the forum state that are unrelated to the cause of action can also satisfy due process but they must "constitute the kind of continuous and systematic general business contacts" that indicate the defendant has generally subjected itself to jurisdiction in that state. *Real Properties, Inc. v. Mission Ins. Co.*, 427 N.W.2d 665, 669 (Minn.1988) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)); *see also Valspar*, 495 N.W.2d at 411 ("In a general jurisdiction case, a defendant conducts so much business within a state that it becomes subject to the jurisdiction of that state's courts for any purpose.") Superior's transactions with Universal are not continuous, systematic and general business contacts with Minnesota indicating that Superior has generally subjected itself to jurisdiction in this state, so those contacts are not relevant here.

another party will not satisfy due process. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183; *see also Dent–Air,* 332 N.W.2d at 907.

 In *Dent–Air,* the supreme court held that Minnesota could not exercise personal jurisdiction over the nonresident defendants, principally because the resident plaintiffs were the aggressors in the transactions at issue. 332 N.W.2d at 907–08.

> The cases have distinguished * * * between the quality of contacts of buyers and sellers. The distinction is based primarily on the traditional scenario in which the seller is the aggressor in the interstate relationship; the seller solicits customers, advertises, or otherwise initiates the dealings. Where the buyer is the aggressor, however, its buyer status will not protect it.

*Id.* at 907 (citations omitted). Mere inquiry by a prospective buyer or seller does not make the inquirer the aggressor in the transaction. In order for a party to be the aggressor, it must be the dominant party in pursuing the transaction. *See id.* at 908.[2]

In those cases where Minnesota has exercised personal jurisdiction over nonresidents based on a single transaction, the nonresidents initiated contacts with the Minnesota residents and took some action that induced the residents to enter into the transaction. *Marquette,* 270 N.W.2d at 296. *Accord Trident Enter. Int'l Inc. v. Kemp & George, Inc.,* 502 N.W.2d 411, 415–16 (Minn.App. 1993). Otherwise, the supreme court has declined to extend personal jurisdiction over nonresident defendants based on a single transaction. *See Bellboy Seafood Corp. v. Kent Trading Corp.,* 484 N.W.2d 796 (Minn. 1992) (no jurisdiction over nonresidents where there was a single sales transaction between Minnesota seller and New York buyer negotiated by a Florida broker).

 Here, Select was the aggressor in the transaction. When Select contacted Superior in New York, it did more than make a simple inquiry about the availability and price of goods. Select actively pursued a contract for the purchase of Superior's goods in order to fulfill its own contract with TRWL. Superior did not initiate the contact, did not distribute advertising intended to reach Select, and did not actively pursue Select's business. Superior did not purposefully direct its activities at a Minnesota resident; it did nothing except engage in negotiations with a buyer who happened to reside in Minnesota.

 Moreover, no part of the contract at issue here was performed in Minnesota. Only the negotiations took place here, and then only by fax and telephone.[3] The goods were delivered to Select in Mobile, Alabama, they never entered Minnesota, and they were destined for the former Soviet Union. In short, the nature and quality of Superior's contacts with Minnesota did not give it "fair warning" it might be sued here. This factor weighs heavily against exercising personal jurisdiction.

 Select makes a substantial argument that Superior had fair warning that it might be sued in Minnesota. Superior knew it was supplying goods to a Minnesota resident for resale to another Minnesota resident. Superior voluntarily became an integral part of a Minnesota business relationship so it should reasonably have foreseen that it would be involved in litigation here if there was a dispute over the goods. But mere foresee-

---

2. We followed the reasoning of *Dent–Air* in *Maiers Lumber & Supply, Inc. v. Chancey Trailers,* 354 N.W.2d 585, 587 (Minn.App.1984) (jurisdiction denied where resident buyer initiated contact with nonresidents and change in delivery terms) and *Walker Mgmt., Inc. v. FHC Enter., Inc.,* 446 N.W.2d 913, 915 (Minn.App.1989), *pet. for rev. denied* (Minn. Oct. 24, 1989) ("[A] defendant's contacts with Minnesota are insufficient to warrant jurisdiction when the plaintiff has initiated the business contacts and the defendant did not purposefully avail itself of Minnesota law.")

3. Appellant argues that Minnesota is precluded from exercising personal jurisdiction over it simply because its only contacts with Minnesota were by fax and telephone. But if the defendant has otherwise purposefully directed its business activities at residents of the forum state the mere fact that the contacts were by mail, fax, and phone, and the defendant was never physically present in the state, will not prevent the forum state from exercising personal jurisdiction. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184; *Marquette,* 270 N.W.2d at 295; *Trident,* 502 N.W.2d at 415.

ability that a transaction will have an impact in the forum state will not confer personal jurisdiction over a non-resident defendant. *Dent–Air,* 332 N.W.2d at 907 (citing *World–Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566).

Select also argues that Superior's contacts are no less substantial than the contacts in *Burger King* that subjected the nonresident there to personal jurisdiction. But it was the nonresident in *Burger King* who "reached out" to create a business relationship with residents of another state, not the resident. 471 U.S. at 479–80, 105 S.Ct. at 2186. No appellate decisions have extended personal jurisdiction where neither the nonresident nor its goods were ever physically present in the forum state, no part of the contract was performed in the state, and the resident was the aggressor in the transaction.

### C. Minnesota's Interest and Convenience of the Parties

The underlying lawsuit here is between two Minnesota residents. Minnesota has a significant interest in providing a forum for its residents in this dispute. Superior, as third-party defendant, is an integral party to the dispute between Select and TRWL, so Minnesota also has a significant interest in providing a forum for the dispute between Superior and Select. If Minnesota does not exercise jurisdiction over Superior, Select may have to litigate this dispute twice, once against TRWL in Minnesota and, if it loses, against Superior in New York. Moreover, it would seem that Superior will have to monitor the litigation in Minnesota because its liability may hinge on the outcome of that case. It does not appear that it would be any more inconvenient for Superior to litigate in Minnesota than it would be for Select to litigate in New York. The convenience of the parties and judicial economy weigh in favor of exercising personal jurisdiction over Superior.

Although the factors of convenience and judicial economy weigh in favor of exercising jurisdiction, they are secondary factors, and proof of these factors, by themselves, fails to establish that due process permits Minnesota to exercise personal jurisdiction over Superior.

### II. Forum Selection Clause

■ Because personal jurisdiction is a matter of individual liberty, Superior could consent to the exercise of personal jurisdiction. *North Cent. Serv., Inc. v. Eastern Communications, Inc.,* 379 N.W.2d 708, 710 (Minn.App.1986) (quoting *Insurance Corp. of Ireland v. Compagnie Des Bauxites,* 456 U.S. 694, 702–03, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982)). This could occur by entering into a contract containing a valid forum selection clause. *Interfund Corp. v. O'Byrne,* 462 N.W.2d 86, 88 (Minn.App.1990) (citing *National Equip. Rental Ltd. v. Szukhent,* 375 U.S. 311, 315–16, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964)).

■ Select faxed a purchase order to Superior in New York, detailing the terms of the sale. The boilerplate provisions of this purchase order included a forum selection clause.[4] The parties did not discuss such a clause during their negotiations. The purchase order was signed on behalf of Select. Superior did not sign the order, but it shipped the goods without objecting to the forum selection clause.

As Select contends, the forum selection clause would be enforceable if it were part of the parties' contract. *See generally Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.,* 320 N.W.2d 886, 888 (Minn.1982). But under the commercial code the forum selection clause was not part of the parties' contract.

Select's purchase order was a written confirmation of the parties' agreement. Minn. Stat. § 336.2–207 (1992) determines whether an additional term, contained in a written confirmation but not expressly negotiated, is part of a contract for the sale of goods.[5]

---

4. "The parties agree that this Purchase Order shall be governed by the laws of the State of Minnesota and any dispute between the parties shall be brought only before the courts of the State of Minnesota."

5. The trial court concluded that the forum selection clause was part of the contract by application of Minn.Stat. § 336.2–201(2) and (3)(c) (1992). Minn.Stat. § 336.2–201 is the U.C.C. statute of frauds. The statute of frauds is not

**336.2–207 Additional terms in Acceptance or Confirmation**

(1) [A] written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

 (a) The offer expressly limits acceptance to the terms of the offer;

 (b) *They materially alter it;* or

 (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such cases the terms of the contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

(Emphasis added.) Although this section typically applies where the parties have sent each other written confirmations with conflicting additional terms, a "battle of forms", it is also applicable where only one party sends a written confirmation of a prior oral agreement. *See* Minn.Stat. § 336.2–207, U.C.C. cmt. 1;[6] *see also Dale R. Horning Co. v. Falconer Glass Indus.,* 710 F.Supp. 693, 697 (S.D.Ind.1989).

Superior and Select are merchants within the meaning of the U.C.C. Minn.Stat. § 336.2–104(1) (1992). The purchase order did not expressly make acceptance of the writing conditional on assent to the additional terms, nor is there any evidence that the parties expressly limited their agreement to the terms agreed upon orally. Under Minn. Stat. § 336.2–207(2), the forum selection clause became part of the contract unless it "materially altered" the parties' agreement or appellant seasonably gave notification of objection to the additional term. Whether an additional term materially alters an agreement is a question of fact which must be resolved on a case by case basis. *N & D Fashions, Inc. v. DHJ Indus., Inc.,* 548 F.2d 722, 726 (8th Cir.1977).

An agreement is materially altered if an addition would "result in surprise or hardship if incorporated without express awareness by the other party." *Id.* (quoting U.C.C. § 2–207 cmt. 4). The Minnesota Supreme Court has stated a presumption that a party adversely affected by a forum selection clause has received consideration at the time of contracting, offsetting any hardship of litigating in a foreign jurisdiction. *Hauenstein,* 320 N.W.2d at 890. If the forum selection clause is contained in the boilerplate language of a confirmatory memorandum, and is not bargained for, this presumption is untenable. The clause works a surprise upon Superior.

 [S]election of a distant forum with which a party has no contacts, while enforceable if contained in an agreement freely and consciously entered into, can result in surprise and hardship if permitted to become effective by way of confirmation forms that are all too often never read. Subtle differences in courts, jurors, and law among the

---

applicable to the case at hand. Minn.Stat. § 336.2–201 only addresses whether an enforceable contract exists and is only applicable when a party raises the statute of frauds as a defense; it says nothing about what the terms of the contract are. The trial court should have applied Minn.Stat. § 336.2–207 to determine whether the forum selection clause was part of the contract. *See* Minn.Stat. § 336.2–201, U.C.C. cmt. 3. *See also Marlene Indus. Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327, 408 N.Y.S.2d 410, 411–12, 380 N.E.2d 239, 240–41 (1978).

**6.** "This section is intended to deal with [the] situation[ ] * * * where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal acknowledgements or memoranda embodying the terms so far as agreed upon and adding terms not discussed."

states and consideration of litigation expense are factors the Court believes most merchants would consider important.

*Dale R. Horning Co.,* 710 F.Supp. at 699 (quoting *Product Components v. Regency Door & Hardware,* 568 F.Supp. 651, 654 (S.D.Ind.1983)); *accord In re Sweetapple Plastics,* 77 B.R. 304, 309 (Bankr.M.D.Ga. 1987); *General Instrument Corp. v. Tie Mfg., Inc.,* 517 F.Supp. 1231, 1235 (S.D.N.Y.1981); *National Mach. Exch. v. Peninsular Equip. Corp.,* 106 Misc.2d 458, 431 N.Y.S.2d 948, 949 (N.Y.Sup.Ct.1980). In the circumstances of this case, the forum selection clause materially altered the parties' agreement as a matter of law and did not become part of the contract by operation of Minn.Stat. § 336.2–207.[7]

■ Even if the forum selection clause were part of the contract under the commercial code, it would be unenforceable because it is illegible. Boilerplate contract terms that are unreadable or illegible are invalid. *See McCarthy Well Co. v. St. Peter Creamery,* 410 N.W.2d 312, 316 (Minn.1987). The forum selection clause is the last of 18 fine print boilerplate contract terms found in the purchase order. We have reviewed the sole copy of the purchase order appearing in the trial court record and agree with Superior that it is not legible.

## DECISION

Minnesota cannot employ its long arm statute to exercise personal jurisdiction over appellant without defeating appellant's due process rights. The forum selection clause included in respondent's purchase order form materially altered the terms of the sale contract and did not become part of the contract under Minn.Stat. § 336.2–207. Respondent's third-party complaint against appellant is dismissed for lack of personal jurisdiction.

**Reversed.**

---

7. Select argues that Minn.Stat. § 336.2–207 is not applicable because prior to faxing the purchase order the parties had no contract. The discussions between Superior and Select were merely oral negotiations and the purchase order was an offer to purchase which Superior accepted by shipping the goods.

During their oral negotiations, Superior and Select agreed on the quantity of goods to be sold, the price, the quality of the goods, where the goods would be delivered and the method of payment. Agreement on these terms is sufficient to form a contract under the Uniform Commercial Code. *See Step–Saver Data Sys. v. Wyse Technology,* 939 F.2d 91, 100 (3d Cir.1991).

Even if the parties did not enter into an oral contract, their agreement on these terms at least constituted an offer to contract. Minn.Stat. § 336.2–207 also applies where the parties do not have a binding contract and the writing is "expressed and intended as the closing of an agreement [and] adds further minor suggestions." Minn.Stat. § 336.2–207, U.C.C. cmt. 1. Whether the parties reached an oral contract or merely made an offer to contract, the forum selection clause was an additional term which must be analyzed under Minn.Stat. § 336.2–207.