**OFFICE SUPPLY STORE.COM,**
Respondent,

v.

**KANSAS CITY SCHOOL BOARD, Appellant.**

No. WD 71726.

Missouri Court of Appeals, Western District.

Jan. 11, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 2011.

Application for Transfer Denied April 26, 2011.

Maurice A. Watson, Esq., Lyndsey J. Conrad and Kara S. Bemboom, Esq., Kansas City, MO, for appellant.

John G. Dorsey, Esq., Claycomo, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

The Kansas City School District appeals the Jackson County Circuit Court's registration of a default judgment entered against it in a California state court. Because we conclude that the California court lacked personal jurisdiction over the School District, we reverse.

## Factual Background

OfficeSupplyStore.com, is an internet domain registered to Office Supply Store, Inc., a corporation based in the state of Washington. As its name suggests, Office Supply sells office supplies and related goods.

Office Supply alleges that School District employees made a series of purchases for which Office Supply has not been paid. On October 6, 2008, Office Supply filed suit against the School District [1] in the Superior Court of Los Angeles County, California, to recover $17,642.54, plus interest at an annual rate of 18.00% from and after November 10, 2005. (It is unclear from the record how Office Supply calculated the amount it claimed to be owed.) Office Supply's complaint asserted six causes of action: breach of contract; open book and account; account stated; conversion; quantum merit; and unjust enrichment.[2]

The School District did not appear in the California lawsuit. Office Supply moved for a default judgment, which the California court granted on May 26, 2009. Judgment was entered against the School District in the amount of $30,542.15, comprised of $17,642.54 in damages, $11,615.33 in prejudgment interest, $919.28 in attorney fees, and $365.00 in costs.

On August 10, 2009, Office Supply filed a petition in the associate division of the Jackson County Circuit Court, seeking to register the California judgment pursuant to Supreme Court Rule 74.14. On September 3, 2009, the School District filed a motion to set aside or vacate registration of the foreign judgment, which the circuit court denied on October 8, 2009. This appeal follows.

## Standard of Review

A circuit court's decision regarding whether a foreign judgment should

---

1. The California complaint actually named as defendants "North East High School," "Kansas City School Board," and "Does 1 through 50." Although it is not clear whether any of these named defendants have the capacity to be sued, the School District does not challenge on appeal that the California lawsuit resulted in a judgment against it, and we therefore refer to the California defendants collectively as "the School District."

2. Office Supply's California complaint alleged that "the Defendants reside in the County of Los Angeles," although in this appeal it does not seek to defend the California court's exercise of personal jurisdiction based on this allegation.

be registered is a legal conclusion. Likewise, a circuit court's determination of personal jurisdiction is a legal conclusion. The circuit courts' legal conclusions are subject to a de novo review on appeal. Therefore, when a defendant appeals a circuit court's decision regarding a claim of lack of personal jurisdiction in a registration-of-foreign-judgment proceeding, the appellate court reviews the legal conclusions de novo and determines whether the foreign court had personal jurisdiction over the defendant and whether the judgment should be registered.

*Peoples Bank v. Frazee*, 318 S.W.3d 121, 127 (Mo. banc 2010) (citations omitted).

## Analysis

The School District argues that the circuit court erred in registering the California judgment because the California court lacked personal jurisdiction over it. If the California court lacked personal jurisdiction, its judgment is void and not entitled to enforcement here. *Peoples Bank*, 318 S.W.3d at 126–27 (citing *Phillips v. Fallen*, 6 S.W.3d 862, 864 (Mo. banc 1999)).

■■■ Although the School District chose not to contest personal jurisdiction in California, it is not precluded from doing so now. [I]f the issues of personal jurisdiction or subject matter jurisdiction were not litigated during the previous proceedings in the sister state, a party may raise them when the foreign judgment is filed in Missouri. *L & L Wholesale, Inc. v. Gibbens*, 108 S.W.3d 74, 80 (Mo.App. S.D. 2003); *Peoples Bank*, 318 S.W.3d at 127. The School District faces an uphill climb, however:

[A] foreign judgment, regular on its face, . . . is entitled to a strong presumption that the foreign court had jurisdiction both over the parties and the subject matter and the court followed its laws and entered a valid judgment. The burden to overcome the presumption of validity and jurisdiction must be met with the clearest and most satisfactory evidence, and this burden lies with the party asserting the invalidity of the foreign judgment.

*Peoples Bank*, 318 S.W.3d at 127 (quoting *Phillips*, 6 S.W.3d at 868). In determining whether personal jurisdiction existed, this Court is not bound by the record in the California proceeding, or by the California court's findings of fact: "[l]ack of jurisdiction may be shown by evidence dehors the record, notwithstanding jurisdictional recitals of the foreign judgment." *In re Aldridge*, 841 S.W.2d 793, 797 (Mo.App. S.D.1992); *Peoples Bank*, 318 S.W.3d at 128.

■■ "To be entitled to full faith and credit, the rendering court's exercise of jurisdiction must not only be permissible under the federal law of due process, but it must also be valid under the state law of the rendering court." *Gletzer v. Harris*, 159 S.W.3d 462, 466 (Mo.App. E.D.2005). Here, however, California's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or the United States," Cal. Civ. P.Code § 410.10, and the School District has not identified any relevant limitations on personal jurisdiction contained in the California constitution; we accordingly address only federal due process principles.

Personal jurisdiction can be general or specific. A court has general jurisdiction over a non-resident defendant if the defendant has "continuous and systematic" contacts with the forum not necessarily related to the cause of action. A court has specific jurisdiction over a non-resident defendant when the suit "aris[es] out of or [is] related to the defendant's contacts with the forum."

*Peoples Bank,* 318 S.W.3d at 129 n. 6 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)); *see also Bryant v. Smith Interior Design Group, Inc.,* 310 S.W.3d 227, 232 (Mo. banc 2010).

■ There is no basis for finding that the School District subjected itself to the general jurisdiction of the California courts. The record does not reflect that the School District has any contacts with the State of California other than the purchase transactions which are the subject of Office Supply's lawsuit.[3] In support of its motion to set aside the registration of the California judgment, the School District submitted an affidavit of the President of its Board of Directors, who stated (without contest by Office Supply) that the School District has no business operations in California, does not regularly solicit business in California, has no offices or agents in California, has not sent any officers or agents to California to transact business, and that the Board has not authorized the School District or its agents to engage in or solicit business in California. Given that the School District's purchases from Office Supply constitute its only conceivable contacts with the State of California, general jurisdiction does not exist.

On this record, there is also no basis for finding that California had specific jurisdiction over the School District. The School District asserted in the trial court that Office Supply is based in the State of Washington. Office Supply did not dispute this contention, and the affidavit of its Chief Executive Officer which it submitted below was executed in King County, Washington. In that affidavit, Office Supply's CEO stated that the company has a web site on the internet and was contacted by defendants by telephone in response to that web site; the affidavit also states that Office Supply contracts with shippers and distributors nationwide to minimize expense to its customers for shipping the product ordered. Given that Office Supply is not based in California, and ships goods from locations throughout the country, the record reflects only two conceivable contacts between the School District and the State of California in connection with the purchase transactions: first, certain credit card statements submitted by Office Supply to the circuit court, reflecting the School District's payment for various purchases, indicate a mailing address in Santa Monica, California; and second, a sample invoice submitted by Office Supply (which identifies the company's U.S. Payment Center as being a Post Office Box in *Portland, Oregon* ) states Legal Venue is Los Angeles, California.

■ The fact that the School District may have made certain payments to an address in California cannot—standing alone—support the California court's exercise of personal jurisdiction. In *M & D Enterprises, Inc. v. Fournie,* 600 S.W.2d 64 (Mo.App. S.D.1980), the Court held that [p]lacing a telephone order from one state and agreeing to send payment to a sister state hardly amounts to an act by which a nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum State. *Id.* at 68 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

---

**3.** The School District has argued at some length on appeal that any dealings by its employees with Office Supply were unauthorized and unenforceable, and that its employees' actions therefore should not be considered for purposes of the personal jurisdiction analysis. Because we have concluded that personal jurisdiction is lacking even when we assume, *arguendo,* that the employees' actions are attributable to the School District, we need not address the School District's lack-of-authority arguments.

Numerous other decisions recognize the principle announced in *M & D*: the simple act of making payments to an address designated by another party is not sufficient, on its own, to establish minimum contacts with the state to which the payments are addressed.

> [T]he sending of payments to the forum is not a jurisdictionally significant contact. Otherwise, all out-of-state purchasers would be subject to personal jurisdiction in the forum state of the seller. Rather, the sending of payments to the forum state is merely a secondary or ancillary factor that does not weigh heavily in the calculus of contacts.

*Browning Enterp., Inc. v. Rex Iron & Mach. Prods. Co.*, 504 F.Supp.2d 1217, 1224 (N.D.Ala.2007) (citations omitted); *see also, e.g., Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 291 (1st Cir.1999) (although courts repeatedly have held that the location where payments are due under a contract is a meaningful datum for jurisdictional purposes, that fact alone does not possess decretory significance); *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir.1986) (The actual mailing of payments to the forum state has been held not to weigh heavily in this determination.); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1030 (5th Cir.1983) (mailing of payments to Texas insufficient to establish personal jurisdiction, even when combined with multiple visits by defendant's agents to Texas); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982) (the making of payments in the forum state ... [is a] secondary or ancillary factor[ ] and cannot alone provide the minimum contacts required by due process).

■ The facts of this case further diminish the significance of the California

payment location. The locations to which Office Supply required payments to be sent apparently varied over time. As noted above, the sample invoice Office Supply submitted to the trial court indicates that, at least in November 2005, Office Supply's "U.S. Payment Center" was a Post Office Box in Oregon; the affidavit of Office Supply's CEO states that this invoice is "in the same form as all invoices sent to defendants during the course of dealings" at issue here. On the other hand, certain credit card statements submitted by Office Supply provide a California payment address. Thus, the decision as to the payment location appears to have rested with Office Supply alone. Where payments are directed to the forum state solely due to a plaintiff's unilateral decision as to where to locate, the fact of such payments cannot support personal jurisdiction. *See, e.g., Whittaker v. Medical Mut. of Ohio*, 96 F.Supp.2d 1197, 1200 (D.Kan.2000) (finding no personal jurisdiction where plaintiff's unilateral actions required · defendant to send insurance payments to forum state, with which it had no other relationship); *Elkman v. National States Ins. Co.*, 173 Cal.App.4th 1305, 93 Cal.Rptr.3d 768, 780 (2009) (finding no personal jurisdiction where plaintiffs unilaterally moved to another state and thus required defendant to receive insurance premium payments from the new state, and pay claims there).

Office Supply also argues that the School District consented to the jurisdiction of California's courts. *See Bryant*, 310 S.W.3d at 232 (recognizing that consent may provide a basis for the exercise of personal jurisdiction, separate and apart from the defendant's contacts with the forum state). In making this argument, Office Supply relies on the sample invoice it submitted to the trial court, which states (in what appears to be 5– or 6–point type) that Legal Venue is Los Angeles, California.

This fine-print statement on Office Supply's invoices cannot establish personal jurisdiction. As a general proposition, a defendant can consent to personal jurisdiction by entering into a contract containing a valid forum selection clause. *See, e.g., Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 726 (8th Cir.2001). But here, Office Supply has provided no evidence that the School District ever agreed to Office Supply's choice of forum. Instead, the forum selection language appears only on invoices sent by Office Supply to the School District after the shipment of the School District's purchases had already been made.

Both Missouri and California have adopted § 2–207 of the pre–2003 Uniform Commercial Code (the "UCC"), which provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

> (a) The offer expressly limits acceptance to the terms of the offer;

> (b) They materially alter it; or

> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

§ 400.2–207, RSMo; Cal. Comm.Code § 2207.

Under § 2–207 as adopted in both Missouri and California, Office Supply's invoices were effective to confirm the parties' agreement to a purchase transaction, despite the inclusion in the invoices of an additional forum selection term. But the additional term did not thereby become part of the parties' contract. It does not appear that the School District would be deemed a "merchant" of office supplies under the UCC definition. *See* § 400.2–104(1), RSMo; Cal. Comm.Code § 2104(1). If the School District is not a "merchant," under § 2–207(2) the additional forum-selection term stated in Office Supply's invoice must be construed simply as a proposal for an addition to the contract. There is no evidence that the School District agreed to the forum selection clause, and Office Supply's attempted reliance on it must accordingly fail. *See Klocek v. Gateway, Inc.,* 104 F.Supp.2d 1332, 1341 (D.Kan.2000) (applying Missouri and Kansas law; finding that "Standard Terms" delivered by seller to non-merchant buyer with shipment of computer "did not become part of the parties' agreement unless plaintiff expressly agreed to them").

Even if the School District were deemed a "merchant," to our knowledge every court presented with the issue has found that a forum selection clause included in a confirmatory writing constitutes a material alteration of the underlying contract; under § 2–207(2)(b), the forum selection clause accordingly cannot become part of the contract absent some indicia of the parties' agreement to the term. *See, e.g., Belanger, Inc. v. Car Wash Consultants, Inc.,* 452 F.Supp.2d 761, 765–66 (E.D.Mich. 2006); *M.K.C. Equipment Co., Inc. v. M.A.I.L.Code, Inc.* 843 F.Supp. 679, 685–86 (D.Kan.1994); *Dale R. Horning Co., Inc. v. Falconer Glass Industries, Inc.,* 710 F.Supp. 693, 699 (S.D.Ind.1989); *TRWL Financial Estab. v. Select Intern.,* 527 N.W.2d 573, 579–80 (Minn.App.1995); *see also Solae, LLC v. Hershey Canada, Inc.,* 557 F.Supp.2d 452, 458 (D.Del.2008) (find-

ing that a forum selection clause contained in an invoice and accompanying "Conditions of Sale" did not become part of the parties' agreement under the United Nations Convention on Contracts for the International Sale of Goods, because it would effect a material alteration in the parties' underlying agreement).

Because the California court did not acquire general or specific personal jurisdiction over the School District, or jurisdiction by consent, the circuit court erred in refusing to set aside the registration of Office Supply's California judgment.

## Conclusion

The circuit court's judgment is reversed.

All concur.